UNITED STATES

v.

**Anthony QUIROZ, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 9801864.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 2 Sept. 1998.

Decided 31 July 2002.

---

4. We also find that the staff judge advocate erred   by attaching the letter to the record.

CDR Michael J. Wentworth, JAGC, USNR, Appellate Defense Counsel.

LT Jason A. Lien, JAGC, USNR, Appellate Government Counsel.

LT Timothy E. Curley, JAGC, USNR, Appellate Government Counsel.

Before the Court *En Banc*.

LEO, Chief Judge:

The appellant was convicted, in accordance with his pleas, of conspiracy to wrongfully dispose of property of the United States, wrongfully selling military property of the United States, wrongfully possessing marijuana (two specifications), and wrongfully manufacturing marijuana, in violation of Articles 81, 108, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 908, and 912a. He was also convicted, in accordance with his pleas, of unlawfully receiving explosive material and of unlawfully possessing, storing, transporting, and/or selling explosive material, in violation of 18 U.S.C. § 842(h), as incorporated under Article 134, UCMJ, 10 U.S.C. § 934, for noncapital crimes or offenses of Federal law. The appellant was awarded a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. As required by the pretrial agreement, the convening authority approved the sentence, but suspended all confinement in excess of 48 months for a period of 12 months from the date that the sentence was adjudged.

## I. Procedural History

In our initial review of this case, *United States v. Quiroz*, 52 M.J. 510 (N.M.Ct.Crim.App.1999)(*Quiroz I*), we held the appellant's convictions for violating both Article 108, UCMJ (Charge II), by wrongfully selling 1.25 pounds of military explosive material, M112 Demolition Charge (hereinafter identified as C–4), and the Federal statute under Article 134, UCMJ (Specification 2 of Charge IV), by unlawfully selling the same

C–4, constituted an unreasonable multiplication of charges. We also held that one of the charges alleging wrongful possession of marijuana plants (Specification 3 of Charge III) was multiplicious with the charge of wrongfully manufacturing marijuana (Specification 2 of Charge III). We then dismissed Charge II and its specification and Specification 3 of Charge III and affirmed the remaining findings. We reassessed the sentence and affirmed a sentence of a dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to pay grade E–1.

The Government made a timely request to this court for *en banc* reconsideration, arguing that the unreasonable multiplication of charges was not a separate legal concept from multiplicity and that such issues should be considered waived if not raised at trial. After granting the reconsideration request and hearing oral argument by the parties, we rejected the Government's analysis and reaffirmed our earlier holding that two convictions for selling the same C–4 was an unreasonable multiplication of charges. *United States v. Quiroz*, 53 M.J. 600, 608 (N.M.Ct.Crim.App.2000)(*Quiroz II*). However, instead of dismissing one of the two charges, we consolidated them into one charge. *Id.* We also set aside the findings and dismissed both specifications of wrongfully possessing marijuana, finding they were lesser-included offenses of the specification of wrongfully manufacturing marijuana. *Id.* After affirming the remaining findings and reassessing the sentence again, we affirmed a sentence of a dishonorable discharge, confinement for 7 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. *Id.* at 609.

On 28 August 2001, our *en banc* decision (*Quiroz II*) was set aside by the Court of Appeals for the Armed Forces (CAAF). *United States v. Quiroz*, 55 M.J. 334, 339 (2001)(*Quiroz III*). In a split decision, the CAAF agreed with our analysis that multiplicity and unreasonable multiplication of charges are different legal concepts, *id.* at 337, and that it was within our discretionary power not to apply forfeiture when a claim of unreasonable multiplication of charges is raised for the first time on appeal. *Id.* at 338. However, the CAAF remanded the case to us for further consideration in light of its "reservations" about one of the factors comprising the analytical framework we established to address claims alleging unreasonable multiplication of charges. *Id.* at 339.

## II. Discussion

■ In *Quiroz II*, we listed the following nonexclusive factors that we would use in determining whether there was an unreasonable multiplication of charges:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications *unfairly* increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 53 M.J. at 607. In considering these factors, we indicated we would grant appropriate relief if we found "the 'piling on' of charges so extreme or unreasonable as to necessitate the invocation of our Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority [to affirm only such findings of guilty and so much of the sentence as we find correct in law and fact and determine, on the basis of the entire record, should be approved]." *Id.*

In reviewing these factors, the CAAF generally concluded that "this approach is well within the discretion of the court below to determine how it will exercise its Article 66(c) powers." *Quiroz*, 55 M.J. at 339. However, it did have reservations about our use of the term "unfairly" under the fourth factor in assessing the increase in an appellant's punitive exposure. The CAAF pointed out that this term "could be viewed as applying the factor under an equitable rather than a legal standard," *id.*, in light of the reference to our "equitable power" in *Quiroz I*. *Quiroz*, 52 M.J. at 513. The CAAF went on to say that this factor could be used only so

long as we applied "a classic legal test" of "[r]easonableness." *Quiroz,* 55 M.J. at 339. In light of this requirement, we will remove any ambiguity as to how this factor is to be applied by restating it, as follows:

4) Does the number of charges and specifications *unreasonably* increase the appellant's punitive exposure?

■ Applying the above factors, as clarified, we reviewed the appellant's conviction of the two charges involving the sale of C–4 to determine if they constituted an unreasonable multiplication of charges. The appellant did not raise this issue at trial. However, these two charges clearly involved the same criminal act. By charging the appellant twice for the sale of the same C–4, the prosecution magnified the extent of his criminal activity and increased the maximum permissible confinement for this sale from 10 years to 20 years. 18 U.S.C. § 844(a)(1); MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 32e(1)(b). The doubling of the appellant's punitive exposure by 10 years is a significant increase that does not appear to be warranted by anything in the record. We, therefore, find that the charges in question did unreasonably increase the appellant's punitive exposure. Finally, the fact that the prosecution negotiated a pretrial agreement to have the appellant plead guilty to both charges indicates the charges were not drafted in this fashion to meet contingencies of proof, suggesting to us prosecutorial overreaching. Under the circumstances, we conclude there was an unreasonable multiplication of charges with respect to the sale of C–4 explosives alleged in the Specification under Charge II and Specification 2 of Charge IV.

### III. Supplemental Assignments of Error

In his Reply Brief of 14 March 2002 on Remand, the appellant raises two supplemental assignments of error. The first assignment of error raises a claim of sentence appropriateness due to an alleged disparity with the sentence of a co-accused. The second one raises a claim of multiplicity for sentencing or, in the alternative, unreasonable multiplication of the following charges: violation of Article 81, UCMJ, 10 U.S.C. § 881, by conspiring to wrongfully dispose of Government property (Charge I and its specification) and violation of 18 U.S.C. § 842(h) under Article 134, UCMJ, by unlawfully receiving stolen C–4 (Specification 1 of Charge IV).

■ In setting aside our *en banc* decision in *Quiroz II,* the CAAF directed us to reconsider whether the two charges of selling C–4 were unreasonably multiplied, in light of its reservations about one of the factors used in our analysis. On remand, "a Court of Criminal Appeals 'can only take action that conforms to the limitations and conditions prescribed by the remand.'" *United States v. Riley,* 55 M.J. 185, 188 (2001)(quoting *United States v. Montesinos,* 28 M.J. 38, 44 (C.M.A.1989)); *see also United States v. Jordan,* 35 M.J. 856, 861 n. 7 (N.M.C.M.R.1992)(countermanding grant of motion to raise supplemental assignments of error because assignments of error beyond scope of remand). We, therefore, conclude these assignments of error are beyond the scope of our limited authority on remand to review. However, assuming *arguendo* that our reading of the CAAF decision is too narrow and that these supplemental claims can be reviewed, we considered them and found them to be without merit.

### IV. Conclusion

As directed, we have reconsidered this case in light of the guidance we received from the CAAF in *Quiroz III,* and we reaffirm our previous decision in *Quiroz II* as to the holdings, the findings, and the sentence in this case.

Senior Judge OLIVER, Senior Judge FINNIE, Senior Judge PRICE, Judge OZMUN, and Judge RITTER concur. Judge BRYANT was recused.

VILLEMEZ, Judge (dissenting):

A good parson once said, that where mystery begins, religion ends. Cannot I say, as truly at least, of human laws, that where mystery begins, justice ends.

Edmund Burke,

*A Vindication of Natural Society* [1]

### Unreasonable Multiplication of Charges

What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person. RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Discussion.

Unreasonable multiplication of charges (UMC) is "a principle that must still be considered as a matter of fundamental fairness." *United States v. Quiroz*, 53 M.J. 600, 605 (N.M.Ct.Crim.App.2000)(*Quiroz II*). It "has long provided courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion." *United States v. Quiroz*, 55 M.J. 334, 338 (2001)(*Quiroz III*).

> On appeal, the issue of unreasonable multiplication of charges involves the duty of the Courts of Criminal Appeals to "affirm only such findings of guilty, and the sentence ... as it ... determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 USC § 866(c). This highly discretionary power includes the power to determine that a claim of unreasonable multiplication of charges has been waived or forfeited when not raised at trial.

*United States v. Butcher*, 56 M.J. 87, 93 (2001)(a post-*Quiroz III* opinion by our superior Court, the United States Court of Appeals for the Armed Forces (CAAF)).

Its *en banc* decision in *Quiroz II* having been set aside and remanded by CAAF in *Quiroz III*, this Court considers—for the third time—the case of the Unites States versus Private First Class (PFC) Anthony Quiroz, United States Marine Corps, for offenses that took place in June 1998. While it has no legal impact on my current participation, I was not a member of this Court for the decision-making process and deliberation for either *Quiroz I* or *Quiroz II*.[2] As a result, I am for the first time writing on several concerns I have with the UMC concept as this Court currently shapes and approves it, and the deleterious impact it is likely to have on the actual conduct of courts-martial in the Fleet, which always should be of primary concern.

### Remand and Reconsideration

The majority opinion herein sets out the limits of this Court's current reconsideration of this case. The controlling precedent of our superior Court cited in the majority opinion above limits our scope herein to only taking action that conforms to the "four corners" of the remand's mandate, thus focusing our consideration to its limitations and conditions. One of the cases cited by the Chief Judge, *United States v. Montesinos*, 28 M.J. 38 (C.M.A.1989), indicates "[t]he terms of the mandate may establish a particular matter as the 'law of the case,' or it may open the controversy so to leave the trial court free to decide the matter anew on the basis of the evidence then before it." *Id.* at 44 (quoting *United States v. Yaeger*, 15 C.M.A. 226, 35 CMR 198, 199, 1965 WL 4650 (1965)) (citations omitted).

While the majority opinion above seems to interpret our remand charter as establishing particular matters as the "law of the case," I believe, while we are not necessarily "free to decide the matter anew," the mandate certainly seems to provide us leeway for discussion and some true reconsideration. *Id.* In its remand decision, our superior Court concludes:

(a) The prohibition against multiplicious charges and that against UMC are distinct legal prohibitions founded on distinct legal principles. *Quiroz*, 55 M.J. at 336.

(b) UMC provides "courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of *an abuse of prosecutorial discretion* in the context of the unique aspects of the military justice system." *Id.* at 338 (emphasis added).

(c) Article 66(c), UCMJ, provides this Court with authority, if desired, to consider all claims of UMC, even if raised for the first

---

1. As quoted THE OXFORD DICTIONARY OF QUOTATIONS 102:39 (2d ed.1955).

2. *Quiroz I* is found at *Unites States v. Quiroz*, 52 M.J. 510 (N.M.Ct.Crim.App.1999).

time on appeal, and to consider waiver *only* if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial; and this Court was "well within its authority to determine the circumstances, if any, under which it would apply waiver or forfeiture to the type of error at issue in [this] case." *Id.*

(d) While this Court's framework for addressing UMC "in general" is well-within the discretion of this Court to determine how it exercises its Article 66(c), UCMJ, powers, the process must be a "legal" one, rather than an "equitable" one. Thus, the review must be "under a classic legal test—whether the action under review was 'reasonable' or 'unreasonable.' " *Id.* at 339. In that regard, there are "reservations" about this Court's "reference to a factor addressing whether 'the number of charges and specifications *unfairly* increase[s] the appellant's punitive exposure.' The term 'unfairly' could be viewed as applying the factor under an equitable rather than a legal standard, in light of ... [the] court's reference to its 'equitable powers' in its initial decision. 52 MJ at 513. The factor may be used, however, so long as it addresses the question in terms of the legal issue as to whether the number of charges and specifications 'unreasonably' increased appellant's punitive exposure." *Id.*

To summarize, I read this guidance as saying:

(a) Multiplicity and UMC are separate legal prohibitions. *Id.* at 337.

(b) Until the Manual for Courts–Martial is amended, "a motion to treat offenses as 'multiplicious for sentencing' remains a valid basis for relief under the Manual." *Id.* at 339.

(c) UMC is designed to combat "an abuse of prosecutorial discretion." *Id.* at 338.

(d) This Court, via its Article 66(c), UCMJ, authority, can determine the circumstances, if any, under which it will apply waiver or forfeiture to a UMC issue.[3] *Id.*

(e) This Court's framework for determining UMC issues must be based upon the legal concept of "reasonableness," vice the equitable idea of "fairness." *Id.* at 339.

Thus, I believe the framework and specific guidance of CAAF's remand in this case, which directs this Court to reconsider *Quiroz II* in light of CAAF's opinion, provides us the permissible leeway to discuss the issues laid out above, without undercutting the normal constraints of *stare decisis*—a legal concept I certainly respect and honor—which compels members of this Court to follow the established published precedents of this Court on a given issue.[4] However, as CAAF recently acknowledged:

> [R]egarding the doctrine of *stare decisis:* adherence to precedent "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." It is a principle of decisionmaking, not a rule, and need not be followed when the precedent at issue is "unworkable or ... badly reasoned."

*United States v. Sills,* 56 M.J. 239, 241 (2002)(quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).

## UMC Considerations

In *Quiroz I* and *II,* this Court breathed new life into the MCM-non-binding-discussion-section-dwelling concept that is UMC. While I agree it is one of those implements still available in the legal toolbox, like the writ-of-mandamus pattern for action in the venerable, but-seldom-cited *Marbury v. Madison,*[5] it is not, or, in my opinion, should not be a frequently-used or much-needed legal instrument of choice.

While I do not lightly take this position, opposed as it is to that of most of my colleagues—whose collected legal knowledge,

---

3. For an explanation of the difference between "waiver" and "forfeiture," see *Quiroz,* 53 M.J. at 605 n. 15.

4. *Stare Decisis* is defined as: The doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation. BLACK'S LAW DICTIONARY 1414 (7th ed.1999).

5. *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803).

skills, and experience I respect and benefit from every day—I feel compelled to do so for several reasons: (1) In its current configuration for application throughout the Naval Service, as a result of this Court's menagerie of *Quiroz* decisions, UMC is an imprecise concept that once again visits uncertainty to an area of the law where finally, after many years of much confusion, a legal practitioner in the field might feel somewhat reasonably confident that he or she knows what the rules of practice truly are, as opposed to being set adrift in the morass that was pre-*Teters* "multiplicity" and its court-martial cousin, "multiplicious for sentencing;" [6] (2) In its current analytical framework, notwithstanding this Court's best efforts to transform it into something otherwise, UMC is an equity-based concept, and it will remain so, despite the attempt to camouflage it by just simply declaring it is now the application of the legal principle of "reasonableness," vice the previously stated one of "fundamental fairness;" [7] (3) While ostensibly existing to provide an important safeguard, UMC is largely unnecessary, because more precise procedures are in place to fix any ills to which it might be applied; (4) UMC is a confusing constraint on a prosecutor's/convening authority's established court-martial-charging discretion; (5) Assuming UMC should be used as a viable legal principle, an appellant's failure to raise the issue at trial should be treated as a forfeiture; and (6) Assuming *arguendo* that this Court should apply UMC within its current framework, it was misapplied in this case.

Our military justice system works best when the "rules of the road" and assigned areas of responsibilities are clearly set out, understood, and followed by each of the various participants within the system, including this Court. While the authority of this Court—bracketed as it is by Articles 59(a) and 66(c), UCMJ—is an "awesome, plenary, *de novo* power of review," [8] the less this court has to use its authority, the better the military justice system works within the Naval Service. When this Court, however, has to set out controlling guidance to the practitioners in the Fleet, it should be in a form and substance that may be clearly understood and implemented, with the goal being to have cases tried where they should be tried—in the courtrooms throughout the Fleet worldwide.[9] The more that happens, and the less case-outcome-determinative issues are decided by a group of appellate judges sitting around a conference table in court chambers in Washington, D.C., the better the military justice system is working.[10]

I would prefer to take the glass is half-full approach, starting from the premises that all the participants in the court-martial process: (a) know their jobs and the law; and (b) will do the lawful and honorable thing, based on their duty and responsibility, both as officers of the court and their individual character as Navy and Marine Corps officers. This includes trial and defense counsel, military judges, staff judge advocates and legal officers, convening authorities, and appellate counsel and judges. In this regard, I disagree with the footnote in *Quiroz II* that states: "After *Teters*, there is otherwise no prohibition against governmental abuse in overcharging as long as the elements of all the charged offenses are different." [11] There is such a prohibition; it's called "professional integrity."

---

6. See *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993) and R.C.M. 906(b)(12).

7. "What's in a name? That which we call a rose by any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, I.ii.43.

8. *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990).

9. "Speak clearly, if you speak at all; carve every word before you let it fall." Oliver Wendell Holmes, Jr., *Quotes for All*, available at http://www.quotesforall.com/h/holmesjroliverwendell.htm.

10. "It is not the critic who counts: not the man who points out how the strong man stumbled or where the doer of deeds could have done better. The credit belongs to the man who is actually in the arena...." Theodore Roosevelt, *Citizenship in a Republic*, Speech at the Sorbonne, Paris, France on 23 April 1910, *Theodore Roosevelt Association, available at http://www.theodoroosevelt.org/life/quotes.htm.

11. *Quiroz*, 53 M.J. at 605 n. 11. *See generally United States v. Neblock*, 45 M.J. 191 (1996).

A primary goal of the military justice system should be to have well-litigated cases, which ensures that "justice" prevails, regardless of who actually "wins" any given case.[12] One of the very compelling things about being privileged to be part of the military legal system is the opportunity each and every day to truly have a gentleman's and gentlewoman's practice of law, which can be achieved without any attorney compromising his or her personal or professional integrity, or the interests of one's "client," whether that client be a private or a seaman recruit, a general or an admiral. Such may be achieved when the rules are clear and the lines of responsibility bright and well-respected. Thus, I do not believe that without the threat of the UMC hammer a horde of imaginative prosecutors suddenly will emerge to rapidly and rampantly multiply charges without reason or limit.

The purpose of this preface is to be able to juxtapose these military-justice-system preferences with what I believe to be potential problems with the way this Court has sculptured the future shape of military law and practice regarding UMC. While it is a legitimate legal concept, I believe, as discussed below, it can be improved upon, and I believe our superior Court has given us the opportunity to do so in our reconsideration of this case and the UMC concept.

### Factors and Forfeiture

*Quiroz II* attempted "to provide a framework for analysis that is workable and understandable to military practitioners and judges. The goals are clarity, fundamental fairness, and protecting the reputation of the military justice system." *Quiroz*, 53 M.J. at 603. "Clarity" and "providing a framework for analysis that is workable and understandable" is difficult, when much of the guidance is so flexible that it provides less-than-desired substance.

While *Quiroz II* presents factors to provide a framework for addressing UMC issues, they are the same factors set out in *Quiroz I*—52 M.J. at 513—for determining

whether this Court should apply forfeiture or not. *Quiroz*, 53 M.J. at 607. In *Quiroz II*, these same factors become the guidance upon which to make outcome-determinative decisions in addressing UMC issues themselves, with the caveat that they are only "a guide" and "non-exclusive factors," indicating there might be more, or there might be less, in any given case. *Id.*

Still unanswered is whether this Court will apply forfeiture or waiver when an appellant has failed to raise a UMC issue at trial.

> [W]e are never **required** to apply forfeiture. Furthermore, when reviewing issues of unreasonable multiplication of charges raised for the first time on appeal, we have concluded that we will not apply forfeiture. However, if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial, we *may* apply waiver. This is a departure from the holding in *Quiroz I* where we applied various factors to determine whether we would find the issue "waived."

*Id.* at 606 *(emphasis added)*(footnote omitted).

Following that statement, *Quiroz II* goes on to cite *United States v. Evans*, 28 M.J. 74 (C.M.A.1989) and its progeny for the proposition that a Court of Criminal Appeals " 'may properly refuse to apply the doctrine of waiver in the exercise of this statutory authority [Art. 66(c), UCMJ].' " *Quiroz*, 53 M.J. at 606 (quoting *Evans*, 28 M.J. at 76). *Quiroz II* continues by citing an Army Court of Criminal Appeals case, wherein that Court "specifically declined to find forfeiture regarding an issue of unreasonable multiplication of charges, citing its Article 66(c), UCMJ, authority." *Quiroz*, 53 M.J. at 606 (citing *United States v. Wright*, 44 M.J. 739, 741 (Army Ct.Crim.App.1996)). *Quiroz II* then continues by noting: "On the other hand, the Air Force Court of Criminal Appeals has elected to apply a bright-line 'waiver' rule." *Id.*

The conclusion to be reached is that this Court has a "highly discretionary power" to apply or not to apply waiver and forfeiture

---

**12.** "The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part I ¶ 3.

when a UMC issue has not been raised at trial. While this sliding flex-standard may intellectually sound appealing, its application may not provide the desired clear guidance to the Fleet, and, in fact, might create additional confusion. One only has to look at its internal application by this Court in the various *Quiroz* cases themselves. At his court-martial, PFC Quiroz entered unconditional guilty pleas to all charges and specifications. Later in the proceedings, his trial defense counsel argued that several of the specifications were multiplicious for sentencing. The military judge disagreed. *Quiroz*, 52 M.J. at 512. In its review of the case, this Court, in *Quiroz I*, decided that the appellant had waived the UMC issue for some of the specifications by not objecting at trial. This is despite the fact that the appellant had not raised a UMC claim regarding *any* of the specifications, including those to which this Court *did not* find forfeiture and for which relief was granted. *Id.* at 513. As discussed above, this Court in *Quiroz II* clarified the issue, somewhat, by deciding it will not apply forfeiture for UMC issues raised for the first time on appeal, but it **might** apply waiver "if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial." *Quiroz*, 53 M.J. at 606. I do not believe that serves to completely clarify any confusion created in *Quiroz I*. For reasons discussed below, I believe this Court should adopt a bright-line forfeiture rule concerning the failure to raise a UMC issue at trial.

### Reasonableness v. Fairness

Not applying forfeiture to UMC issues not raised at trial creates several problems, the primary one of which is the resulting lack of a fully-developed record concerning the UMC issue, which serves to hamper this Court in its effort to give a meaningful review in exercising its Article 66(c), UCMJ, responsibilities. *United States v. Prater*, 32 M.J. 433, 437 (C.M.A.1991). A lack of sufficient facts also ties into a specific challenge given this Court by CAAF in its remand for

reconsideration in this case. This Court has been directed to ensure that it applies the legal standard of "reasonableness," vice the equitable one of "fairness." The more facts this Court has before it, the more likely it is to be able to actually apply the reasonableness standard, because a determination of what is "reasonableness" and what is not often is driven by having a sufficient amount of relevant facts. For example:

(a) *Fairness:* It is fair to let everyone on the team play in the game.

*Reasonableness:* Depending on the nature of the players involved and the level of competition, if it is the championship game, it may be reasonable to play only those players who give the team the best chance to win.

(b) *Fairness:* In a fight, it is not fair to hit someone while he or she has their back turned or is down.

*Reasonableness:* If that person is trying to *kill* you, it may be both reasonable and legally permissible to "hit" him or her while their back is turned or they are down.

As defined in this Court's decisions in *Quiroz I* and *Quiroz II*, and CAAF's in *Quiroz III*, the framework of this Court's UMC approach is equity-based.[13] The majority opinion herein has not sufficiently corrected the deficiency noted by CAAF in *Quiroz III*, regarding this Court's fourth factor, when it references an *unfair* increase in the appellant's punitive exposure. *Quiroz*, 55 M.J. at 338–39. Merely excepting out the word "unfairly" and substituting the word "unreasonably," standing alone is not enough to provide true meaningful guidance to field practitioners, particularly, as CAAF noted in *Quiroz III*, given this Court's reference to its "equitable powers" and "promoting fairness considerations" in both *Quiroz I* and *Quiroz II*. *Quiroz*, 55 M.J. at 338–39; *Quiroz*, 53 M.J. at 603, 604, 605, 606, 608; *Quiroz*, 52 M.J. at 512, 513.

---

13. KENNETH H. YORK & JOHN A. BAUMAN, CASES AND MATERIALS ON REMEDIES 57 (3d ed.1979)("[I]t is solely because these legal remedies are, under the assumed circumstances, inadequate to do complete justice, by reason of the imperfection of the judicial methods adopted by the law courts, that the courts of equity have also the power to interfere and to award, in pursuance of their own judicial methods, remedies which are of the same general kind as those granted by the courts of law to the same litigant parties under the circumstances.")

By forcing an accused and his or her counsel to "use or lose" the UMC issue by litigating it at the trial level, more of the relevant facts will be developed and preserved in the record for use by this Court in resolving the issue. The more facts available, the more "reasoned" the review process and the decision. Additionally, if the issue is litigated in the field, the Government will have an opportunity to explain its charging rationale, and if the military judge concludes that one charge or specification or another has to go, the Government then will have a choice as to that which it would rather preserve. Such is not the case when a UMC issue is considered for the first time on appellate review.

### Reasoned UMC Process

I believe the application of the UMC concept can be modified to provide a cleaner, tighter framework for analysis, while still providing effective corrective action when necessary. Quite simply, if not raised at trial, the UMC issue, absent plain error, would be forfeited. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Lloyd,* 46 M.J. 19 (1997). Any residual action necessary to ensure justice in a given case could be made under this Court's Article 66(c), UCMJ, authority, which—quite frankly—is where the heart of this Court's current UMC concept beats anyway. If the appellant raises a UMC issue at trial, thus preserving it for appeal, this Court would examine it for "prosecutorial overreaching," which would be the threshold for granting any type of relief under the UMC concept. This streamlined UMC process could be achieved without compromising the integrity of the military justice system, or the achievement of the ultimate

goal of ensuring that justice is done in any given case. To leave it as it is currently configured will continue to create confusion and "mystery" surrounding the UMC-related process and procedures, due to its amorphous nature and its being clothed in the cloak of this Court's almost-mysticalesque Article 66(c), UCMJ, powers.[14]

The pieces already are in place to achieve this UMC process transformation without compromising justice. Any UMC-related issue can be addressed through one of four already-available tools: (a) the current rules regarding "multiplicity," which have brought some semblance of order to the morass that was multiplicity, an issue that has plagued military litigants since W. Winthrop was a second lieutenant;[15] (b) the ability of an accused to seek relief by making a motion for appropriate relief based on "multiplicity of offenses for sentencing purposes" under R.C.M. 906(b)(12);[16] (c) the military judge's authority to take corrective action regarding an abuse of prosecutorial discretion;[17] and (d) this Court's Article 66(c), UCMJ, authority, which is its "clear[ ] *carte blanche* to do justice."[18] The key player in dealing with UMC issues should be the military judge, who has the authority to create and implement appropriate relief to fulfill his ultimate mission—"guaranteeing that justice is done." *United States v. Balcarczyk,* 52 M.J. 809, 813 (N.M.Ct.Crim.App.2000). Among the options available to the military judge are: consolidating charges or specifications; considering them synonymous for sentencing; or dismissing charges or specifications. *Id.* at 813–14.

---

14. "Some tests are so subjective that, applied to the same facts, they can produce different results for different people." *United States v. Baker,* 14 M.J. 361, 372 (C.M.A.1983)(Cook, J., dissenting).

15. *See Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Neblock,* 45 M.J. at 191; *United States v. Oatney,* 45 M.J. 185 (1996); *United States v. Morrison,* 41 M.J. 482 (1995); *Teters,* 37 M.J. at 370, and their progeny.

16. *See Quiroz,* 55 M.J. at 339.

17. *See Morrison,* 41 M.J. at 484 n. 3, *United States v. Foster,* 40 M.J. 140, 144 n. 4 (C.M.A. 1994), *United States v. Oatney,* 41 M.J. 619, 623 (N.M.Ct.Crim.App.1994), and Michael J. Breslin & LeEllen Coacher, *Multiplicity and Unreasonable Multiplication of Charges of Charges: A Guide to the Perplexed,* 45 A.F.L.Rev. 99, 123 (1998)[hereinafter *Multiplicity and UMC*], which provides an excellent review of this entire area of the law.

18. *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A.1991).

## *Quiroz* I & II

Addressing the case at hand, regardless of what one may feel about the specifics, or lack thereof, of this Court's current UMC analytical framework, I believe that analysis is misplaced in this case. *Quiroz I* indicates that this Court had been dealing with "numerous cases" in which UMC-related issues had been raised. It appears that perhaps the Court was anxious to find a case by which to develop and provide a framework for UMC analysis, in order to assist the field in dealing with such issues.[19] Unfortunately, I believe the wrong case was chosen.[20] While on the surface, it appears to be a good vehicle by which to develop the UMC procedures and process, both the analysis and the result, I believe, are flawed somewhat.

On its face, twice charging the same sale of the same explosives appears to rate a quick UMC penalty flag. PFC Quiroz was charged both with selling "approximately 1.25 pounds of M112 Demolition Charge (C–4), explosive material, military property of the United States," under Article 108, UCMJ, and, under Article 134, UCMJ, with "unlawfully possessing, storing, transporting, and/or selling approximately 1.25 pounds of M112 Demolition Charge (C–4), explosive material, knowing or having reasonable cause to believe that such explosive material was stolen," in violation of 18 U.S.C. § 842(h).[21] Charge Sheet. In accordance with his pleas, the military judge found PFC Quiroz, along with other charges and specifications, guilty of both. The military judge then denied the defense request that the two specifications be considered, not as a UMC, but as multiplicious for sentencing. *Quiroz,* 53 M.J. at 602.

Upon its *en banc* reconsideration of this case in *Quiroz II*, this Court: (a) declined to apply forfeiture to the UMC issue the appellant raised for the first time on appeal (*Id.* at 606); (b) while finding "no evidence of prosecutorial overreaching," concluded that the two questioned sale specifications did constitute an unreasonable multiplication of charges (*Id.* at 608); and (c) as a remedy, consolidated the two specifications under Article 134, UCMJ (*Id.* at 608–09). The consolidated specification under Article 134, UCMJ—after the obligatory identification data—reads: "... on or between 1 June 1998 and 30 June 1998, violate 18 U.S.C. § 842(h) by unlawfully possessing, storing, transporting, and disposing of by selling approximately 1.25 pounds of M112 Demolition Charge (C–4), explosive material, knowing or having reasonable cause to believe that such explosive material was stolen." *Quiroz,* 53 M.J. at 608. All reference to the explosives having been Government property was completely expunged. While CAAF, in its decision in *Quiroz III*, indicates that the approach used by this court was "well within the discretion" of this court "to determine how it will exercise its Article 66(c) powers," I question the result this Court reached in this case in several regards. *Quiroz,* 55 M.J. at 339.

First, this Court found no prosecutorial overreaching in this case. *Quiroz,* 53 M.J. at 608.[22] I would suggest that without a finding of "prosecutorial overreaching," there is no UMC issue.[23] Second, if several

---

19. In a footnote in *Quiroz II,* this Court indicates: "The holdings of the Army and Air Force Courts of Criminal Appeals have kept the differences of the concepts of multiplicity and unreasonable multiplication of charges clearer than our Court has." *Quiroz,* 53 M.J. at 604 n. 9.

20. However, as General Colin Powell said, perhaps in a *different* context, "Don't let adverse facts stand in the way of a good decision." James Charlton, Editor, The Military Quotation Book 80 (2002).

21. Composition C–4 is a white, putty-like, odorless plastic explosive. It is more powerful than TNT, with many desirable characteristics as a military explosive. It remains plastic over a wide-range of temperatures, can be molded to fit irregular shaped objects, and may be used under

water. Guidebook For Marines 347 (10th ed.1965).

22. Disagreeing with itself, this Court in the majority opinion above—applying the same basic framework and factors as it used in *Quiroz II,* which found none—now finds a suggestion of "prosecutorial overreaching," which is a striking example of the problems inherent in attempting to apply the currently-structured UMC framework.

23. In *Quiroz III,* CAAF states: "[T]he prohibition against unreasonable multiplication of charges addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *Quiroz,* 55 M.J. at 337.

charges/specifications are not multiplicious for findings, not multiplicious for sentencing, and there is no prosecutorial overreaching, what is the basis for relief? The primary problem I have with this case goes back to my position expressed above. The military justice system works best when each of the various participants in the process does his or her assigned task, based on clearly-stated and clearly-understood rules and guidance, which acknowledge the mission and authority each have within the system. A healthy respect for the "separation of powers" within the system, while not abdicating one's duties and responsibilities, is essential. While CAAF has likened the military Courts of Criminal Appeals to "the proverbial 800–pound gorilla when it comes to [our] ability to protect an accused[,]"[24] it seems to me the system works better when this Court heeds President Teddy Roosevelt's advice to "Speak softly and carry a big stick...."[25]

In *Ball v. United States,* the Supreme Court concludes: "This Court has long acknowledged the Government's broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." *Ball,* 470 U.S. at 859, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). As long as particular charges and specifications may be legally referred to a court-martial—meaning they are not multiplicious by law—then deference should be given to prosecutorial discretion concerning which charges are to be tried, in order to most accurately capture and document the ac-

cused's alleged misconduct.[26] The Government has an inherent, almost-proprietary interest in documenting misconduct and should be allowed to do so, except in those rare cases when true prosecutorial overreaching clearly evidences an unreasonable piling on of excessive charges,[27] to the point where one "know[s] it when [he or she] see[s] it," which in essence is where the current procedure is at anyway.[28] In such cases, as discussed above, the military judge is well-equipped to "cure" the improper proliferation of charges, either in limiting the charges themselves, or in protecting the accused regarding potential punishment. Sentencing is really where the accused needs to be and should be protected.[29] "[U]nreasonable multiplication of charges usually raises a question affecting the sentence, not the findings." *Middleton,* 12 C.M.A. at 58, 30 C.M.R. at 58.

It seems reasonable that the Government's interests are served when the accused's misconduct is properly documented, while the accused's primary interest is protected when the maximum punishment is limited. If all the process safeguards and checks and balances fail prior to the case reaching this level, this Court always can ensure the "right thing" is done through the exercise of its "clear[ ] *carte blanche* to do justice," courtesy of Article 66(c), UCMJ. *Claxton,* 32 M.J. at 162.[30]

In *Quiroz II,* this Court applied its now-modified UMC process to ensure "fundamental fairness." *Quiroz,* 53 M.J. at 608. By

---

**24.** *United States v. Parker,* 36 M.J. 269, 271 (C.M.A.1993).

**25.** Theodore Roosevelt, *Theodore Roosevelt Association, see supra* note 10. The entire quotation is: "Speak softly and carry a big stick; you will go far."

**26.** "Although the prosecutorial discretion of a convening authority is broad, it is not unlimited. One well-established limitation on the power of the prosecutor is that he cannot, for the purpose of influencing the jury, charge a single offense in several counts." *Baker,* 14 M.J. at 365 (citations omitted).

**27.** "The exaggeration of a single offense into many seemingly separate crimes may, in a particular case, create the impression that the accused is a 'bad character' and thereby lead the

court-martial to resolve against him doubt created by the evidence." *United States v. Middleton,* 12 C.M.A. 54, 58–59, 30 C.M.R. 54, 58–59, 1960 WL 4635 (1960). *Accord United States v. Sturdivant,* 13 M.J. 323, 329–30 (C.M.A.1982).

**28.** *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)(Stewart, J., concurring).

**29.** It is noted that PFC Quiroz had a pretrial agreement that capped confinement at 48 months. *Quiroz,* 53 M.J. at 602.

**30.** "In those rare instances in which [prosecutorial] discretion is abused to such a shocking extent that due process of law has been infringed, no test would stand in the way of remedial action." *Baker,* 14 M.J. at 376 (Cook, J., dissenting).

consolidating the offending specifications, as noted above, the Article 108, UCMJ charge of selling Government property was lost altogether, simply obliterated. The Government has an obvious interest in prosecuting and documenting the unlawful sale of Government/military property by service members, whether the property in question be explosives or not. Likewise, it certainly has a separate and distinct interest in doing the same with the unlawful possessing, storing, transporting, selling, or disposing of stolen explosives under 18 U.S.C. § 842(h), via Article 134, Clause 3, UCMJ, and the Federal Assimilative Crimes Act, 18 U.S.C. § 13. MCM, Part IV, ¶¶ 60c(1) and (4).[31]

Granted the single sale of the explosives is the genesis of both questioned specifications, but an alternative solution would have been to simply "correct" the Article 134, UCMJ, specification by excepting out the "sale," which would serve to protect both the interests of the Government in accurately documenting the appellant's misconduct by preserving the Article 108, UCMJ, conviction, while protecting the appellant's interests regarding the UMC issue. In three companion cases to that of PFC Quiroz, this Court did, in fact, use the exception-and-substitution remedy to save both the Article 108 and the Article 134, UCMJ, specifications.

In *United States v. Matyniak,* Lance Corporal (LCpl) Matyniak was convicted, in accordance with his pleas, of specifications under both UCMJ articles. There was, however, no evidence that LCpl Matyniak "transported" or "sold" the stolen explosives, which he merely had *given* to another Marine. On appeal, based on this Court's decision in *Quiroz I,* LCpl Matyniak raised a UMC issue. This Court concluded that upon its elimination of the offending phrase "transporting, or selling," there was no UMC issue, and, therefore, LCpl Matyniak was not entitled to the relief afforded PFC Quiroz. Ironically, LCpl Matyniak, who did not transport or sell the stolen Government

explosives (in violation of 18 U.S.C. § 842(h)), had his convictions under both Articles 108 and 134, UCMJ, affirmed and his sentence affirmed, while PFC Quiroz, who did both, had his Article 108 conviction expunged and his sentence reduced accordingly.[32] *United States v. Matyniak,* No. 9900937, 2000 WL 339959 (N.M.Ct.Crim. App. 23 Mar. 2000) (unpublished op.).

In the two other companion cases to that of PFC Quiroz, this Court saved both the questioned Article 108 and Article 134, UCMJ, specifications, by using exceptions and substitutions to conform the Article 134, UCMJ, specification to each appellant's actual 18 U.S.C. § 842(h)—violating misconduct, reassessing the sentence in each case. *United States v. Tucker,* No. 9900935, 2002 WL 5675 (N.M.Ct.Crim.App. 7 Dec. 2001)(unpublished op.); *United States v. Harris,* No. 200000354, 2001 WL 569987 (N.M.Ct.Crim. App. 29 Nov. 2000)(unpublished op.).

I realize the case of PFC Quiroz can be distinguished somewhat from those of his three companions in crime, in that in *Quiroz* this Court eliminated a specification in which the operative misconduct was the same as that contained in a second specification, while in the three companion cases, this Court saved both specifications by eliminating an alleged act of misconduct that was not supported by the evidence in each case. However, I am not sure that the distinction has a real difference, in the sense that the same curing process could have been used in all four cases, including that of PFC Quiroz.

### Conclusion

I respectfully dissent from the holdings and findings of this Court's reconsideration in this case. Since the Article 108 and the Article 134, UCMJ, specifications violated separate and distinct statutes—thus, no double jeopardy or multiplicity problems were present—each could have been approved as they stood before this Court. In *Blockburger v. United States,* the Supreme Court affirmed convictions for violations of two sec-

---

**31.** "Only by enforcing every law violated by certain conduct can the prosecutor effectively vindicate the interests served by each distinct criminal enactment." *United States v. Henderson,* 19 F.3d 917, 926 (5th Cir.1994).

**32.** There was sufficient evidence to support the fact that LCpl Matyniak had wrongfully possessed and stored the stolen explosives in violation of 18 U.S.C. § 842(h).

tions of the same statute by a single action, concluding that "by the one sale, two offenses were committed." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. The Court indicates:

> The plain meaning of the provision is that each offense is subject to the penalty prescribed; and if that be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction. Under the circumstances . . . it is true that the imposition of full penalty of fine and imprisonment upon each count seems unduly severe; but there may have been other facts and circumstances before the trial court properly influencing the extent of the punishment. In any event, the matter was one for that court, with whose judgment there is no warrant for interference on our part.

*Id.* at 305, 52 S.Ct. 180. A sentiment that the Supreme Court later echoes in *Bartkus v. Illinois*, when it concludes: "Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." *Bartkus v. Illinois*, 359 U.S. 121, 131–32, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

In the alternative, short of approving the findings as approved on review below in this case, this Court could have eliminated any UMC problems, as it did with the three *Quiroz* companion cases, by excepting out the words "by selling" from the Article 134, UCMJ, specification. Such a solution would have protected the rights, authority, and interests of all parties—including PFC Quiroz—in a simple, straightforward manner.

In his own "Sargasso Sea" musing, Judge Cook, in his dissent in *United States v. Baker*—which ostensibly confronts the issue of multiplicity, but some believe really addresses the issue of unreasonable multiplication of charges—[33] states:

> The difference, it seems to me, is that the Federal courts strive to effectuate the will of the legislature. We, on the other hand, have attempted to create rules on an *ad hoc* basis to achieve what we believe to be a proper result in a given case. . . . [W]ith each new rule we have established a precedent which has only compounded the confusion. It is evident that no single rule can be created which will adequately accommodate everyone's notion of justice in every situation.

*Baker*, 14 M.J. at 375 (Cook, J., dissenting).

Within the military justice system in the Naval Service, as best we can at our level in the process and without abdicating our own duties and responsibilities, we should strive: to respect and apply the law; to respect the lines of authority and responsibility of the various participants within the system; to keep the rules and procedures as clear and simple as possible; and to let the primary action in a court-martial take place where it should take place—in the military courtrooms around the world, and not in the Washington, D.C. chambers of this Court.

---

**33.** "In fairness it should be observed that *Baker* really addressed the issue of unreasonable multiplication of charges—it was the misapplication of the *Baker* test to the separate concept of multi- plicity which created chaos in military law." Breslin & LeEllen, *Multiplicity and UMC*, 45 A.F.L.Rev. at 121; *see also Quiroz*, 53 M.J. at 603.