UNITED STATES, Appellee

v.

Rodger J. DAY, Airman Basic
U.S. Air Force, Appellant

No. 07-0690

Crim. App. No. 36423

United States Court of Appeals for the Armed Forces

Argued January 15, 2008

Decided April 1, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel

For Appellant:  Captain Vicki A. Belleau (argued); Lieutenant Colonel Mark R. Strickland (on brief).

For Appellee:  Captain Ryan N. Hoback (argued); Colonel Gerald R. Bruce, Major Matthew S. Ward, and Major Donna S. Rueppell (on brief).

Military Judge:  Mary M. Boone




<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge BAKER delivered the opinion of the Court.

Appellant was tried before a general court-martial with members at Little Rock Air Force Base, Arkansas. Contrary to his pleas, he was convicted of making a false official statement, reckless endangerment, and obstructing justice, all in violation of Articles 107 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 934 (2000). The adjudged and approved sentence included a bad-conduct discharge, confinement for ninety days, and forfeiture of all pay and allowances. The United States Air Force Court of Criminal Appeals affirmed. United States v. Day, No. ACM 36423, 2007 CCA LEXIS 202, 2007 WL 1732431 (A.F. Ct. Crim. App. May 9, 2007) (unpublished). On Appellant's petition we granted review of the following question:

> WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION OF CHARGE I AND ITS SPECIFICATION, FALSE OFFICIAL STATEMENT, ARTICLE 107, UCMJ, WHERE THE STATEMENTS WERE NOT "OFFICIAL" STATEMENTS.

Based on the reasoning below, we hold that although the statements made by Appellant to the on-base emergency medical personnel were "official" under Article 107, UCMJ, those made to the civilian 911 operator were not. Nonetheless, for the reasons discussed below, we affirm.

2

FACTS

The lower court set forth the following facts relevant to the granted issue:

> The appellant, his wife, and two children lived in base housing at Little Rock Air Force Base, (LAFB) Arkansas. On 26 September 2003, the appellant was at home with the children while his wife went out. The appellant put the children to bed and then went to bed shortly thereafter. At approximately 0400 hours on 27 September 2003, O.J.H.D. awoke the appellant. The appellant got up, went into O.J.H.D.'s room, changed his diaper, applied paste to his son's diaper rash, and propped a bottle in his mouth using a teddy bear found in the crib to do so. In addition, the appellant tucked O.J.H.D. in his crib with blankets (including a quilt) before going back to his room to go to sleep. The appellant woke up at about 0900 hours on 27 September 2003. He noticed his son had not awakened him between 0400 and 0900 hours. This was unusual because normally O.J.H.D. would awaken the appellant sometime during those hours. When the appellant checked on his son, he found him lying still on his back with his mouth and nose covered by the quilt. According to the appellant's written statement, he took his son out of the crib, went to the living room, and started checking him for signs of life. He then changed his son's diaper and got dressed before calling 911 for help. He took approximately 45 minutes between the time he first noticed his son lying motionless and the time he called 911. According to the appellant, he tried to revive his son via CPR before calling 911, but was unable to do so.

> The appellant informed the 911 dispatcher, Ms. E.M., he found his son lying <u>face down</u>, his lips were blue, and he was not moving. Ms. E.M. instructed the appellant how to perform CPR on his infant son. The appellant continued to perform CPR on O.J.H.D. until the fire department arrived. The appellant told Mr. J.T. and Mr. W.P., firemen from the LAFB Fire Department, he found his son <u>face down</u> in the crib. The firemen began performing CPR on the appellant's son. Once the paramedics arrived, O.J.H.D. was

3

transported by ambulance to a local off base hospital. Unfortunately, O.J.H.D. could not be saved and was declared dead at 0953 hours on 27 September 2003.[1]

2007 CCA LEXIS 202, at *2-*4, 2007 WL 1732431, at *1 (footnotes omitted).  Appellant's statements to the dispatch operator and the responding firemen formed the basis of the offense charged under Article 107, UCMJ.[2]

## DISCUSSION

The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt.  United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987).  This Court's assessment of an appellant's guilt or innocence for legal sufficiency is

---

[1] At the time, Appellant's infant son was nine weeks old.

[2] The specification under Charge I reads as follows:

> Specification:  In that AIRMAN BASIC RODGER J. DAY, United States Air Force, 314th Civil Engineer Squadron, Little Rock Air Force Base, Arkansas, did, at or near Little Rock Air Force Base, Arkansas, on divers occasions, on or about 27 September 2003, with intent to deceive, make to Mr. Jan Edrick Tan, Mr. William Powell, and Ms. Elaine Mayberry an official statement, to wit:  that on 27 September 2003, Airman Basic Rodger J. Day found his son, Owen Jasper Hosford Day, lying face down in his crib, which statement was false in that Airman Basic Rodger J. Day found his son, Owen Jasper Hosford Day, lying face up in his crib, and was then known by said Airman Basic Rodger J. Day to be so false.

limited to the evidence presented at trial.  See United States v. Dykes, 38 M.J. 270, 272 (C.M.A. 1993).

Appellant argues that the statements made were not "official" statements within the meaning of Article 107, UCMJ. First, the statements were made to a civilian.  Second, they were made when he was in an off-duty military status.  And third, they did not relate to his military duties.  In support of his argument, Appellant points to the Manual for Courts-Martial, United States pt. IV, para. 31.c.(1) (2005 ed.) (MCM), which states in relevant part, "[O]fficial statements include all documents and statements made in the line of duty."

Article 107, UCMJ, states:

> Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

This article has been interpreted in light of the Supreme Court's analysis of its federal analogue, 18 U.S.C. § 1001 (2000).  Specifically, this Court analogized the meaning of "official" with the language of 18 U.S.C. § 1001 prohibiting any false statement made concerning "any matter within the jurisdiction of any department or agency of the United States," as interpreted liberally by the federal courts.  United States

v. Jackson, 26 M.J. 377, 378 (C.M.A. 1988) (citation and quotation marks omitted).

At the same time, Article 107, UCMJ, and 18 U.S.C. § 1001 are not perfectly congruent. "In fact, this Court has recognized that the scope of Article 107 is more expansive than its civilian counterpart, because 'the primary purpose of military criminal law —- to maintain morale, good order, and discipline -- has no parallel in civilian criminal law.'" United States v. Teffeau, 58 M.J. 62, 68-69 (C.A.A.F. 2003) (citations omitted). For example, in United States v. Harrison, 26 M.J. 474, 476 (C.M.A. 1988), statements made to a battalion personnel actions center clerk regarding the appellant's pay inquiry were found to be official due to the appellant's admission that they "were related to [the clerk's] job."

With this legal backdrop we turn to Appellant's three arguments. Regarding Appellant's first distinction, the fact that the statements were made to a civilian or a military member is not dispositive of their official nature. Rather, the critical distinction is not whether the recipient of a statement is civilian or military, but whether the statements relate to the official duties of either the speaker or the hearer, and whether those official duties fall within the scope of the UCMJ's reach. Thus, in Teffeau, this Court found that the appellant's statements to civilian law enforcement officers were

6

official because they "bore a direct relationship to Appellant's duties and status as a Marine Corps recruiter." Teffeau, 58 M.J. at 69.

For similar reasons, Appellant's off-duty status is not determinative in this case; and Appellant's effort to distinguish Teffeau by correctly noting that his statements did not relate to his military duties is not persuasive. False official statements are not limited to line of duty statements. This principle is reflected in this Court's case law, which has approached the issue from the perspective of both the hearer and the speaker. See generally United States v. Arthur, 8 C.M.A. 210, 210-11, 24 C.M.R. 20, 20-21 (1957); United States v. Cummings, 3 M.J. 246, 248 (C.M.A. 1977).[3]

There are any number of determinations made outside of a servicemember's particular duties that nonetheless implicate official military functions, and thus the proscription against false official statements. For example, under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2672 (2000), determinations made regarding a servicemember's entitlements are official as are statements implicating the government's liability. Teffeau, 58 M.J. at 68 n.3.

---

[3] In both Arthur and Cummings, the Court found that the statements made were unofficial due to the lack of a governmental function, but were analyzed from the standpoint of the recipients.

Applying this legal framework to the present facts and in light of the purposes of Article 107, UCMJ, Appellant's statements were appropriately determined to be false. They were also official, in so far as they were made to civilian personnel who were members of the base fire department charged with performing an on-base military function. These personnel were providing on-base emergency services pursuant to the commander's interest in and responsibility for the health and welfare of dependents residing in base housing over which he exercised command responsibility.

This is evident in the case of the firemen. However, a closer question is presented as to whether Article 107, UCMJ, reaches the statement made to the civilian off-base 911 dispatch operator. On this record the evidence is not sufficient for us to conclude that the statements to the 911 operator were official, but this conclusion does not affect the finding of guilt as to the charge and specification.[4] In affirming Appellant's conviction for the statements made to the emergency responders, we are confident that without the additional

---

[4] In theory, statements made to an off-base 911 operator might implicate Article 107, UCMJ, in situations where, among other things, there is a predictable and necessary nexus to on-base persons performing official military functions on behalf of the command.

statement made to the 911 operator, the sentence adjudged and approved would have been the same.[5]

DECISION

For the reasons stated above, the decision of the United States Air Force Court of Criminal Appeals is affirmed, except for the words "and Ms. Elaine Mayberry" contained in the specification under Charge I.

---

[5] In the specification at issue, the 911 operator is Ms. Elaine Mayberry.