UNITED STATES

v.

**Senior Airman Taureen J. COFER,
United States Air Force.**

ACM 37075.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 May 2007.

16 Oct. 2008.

Appellate Counsel for the Appellant: Lieutenant Colonel Mark R. Strickland and Captain Tiffany M. Wagner.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Matthew S. Ward, and Major Brendon K. Tukey.

Before FRANCIS, HEIMANN, and THOMPSON, Appellate Military Judges.

OPINION OF THE COURT

THOMPSON, Judge:

Consistent with the appellant's pleas, a military judge sitting as a general court-martial convicted him of one charge and one specification of burning with the intent to defraud and one specification of obstructing justice, both in violation of Article 134, UCMJ, 10 U.S.C. § 934, and one charge and two specifications of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907. The adjudged and approved sentence consists of a bad-conduct discharge, confinement for sixteen months, forfeiture of all pay and allowances, and reduction to E-1. In his appeal, the appellant asserts that his plea to Specification 1 of Charge II was improvident in that he did not make an "official" statement. We find to the contrary, and affirm.

*Background*

The appellant was a weapons load crew member assigned to Luke Air Force Base (AFB), Arizona. In October 2006, the appellant purchased a 2004 Honda Accord. One month later, he realized the payments were too expensive. He devised a scheme in which he would burn the car and claim it as stolen, hoping it would be deemed a total loss, with the debt written off. In preparation, the appellant filled four one-gallon water jugs with gasoline. At 0300 on 1 December 2006, the appellant drove his car to a local apartment complex and parked it. Later that morning before work, the appellant called a staff sergeant from his shop and asked for a ride to work. He called his insurance company and reported the car as stolen, and they offered the appellant the use of a rental car. The appellant asked the same staff sergeant who drove him to work to take him to the rental car company. The staff sergeant was unaware of the appellant's scheme.

That night around 2130, the appellant contacted a friend, Ms. M, and asked her to drive him to the apartment complex where he had parked his car. After picking up his car, he told her to meet him at a designated location in about ten minutes. The appellant drove his car to an open location near Luke AFB, poured the four gallons of gasoline on top of and inside his car and set it ablaze with a lighter. The appellant's clothes caught on fire, and he ran from the burning car, stripping off his shirt and pants. When he rendezvoused with Ms. M, he was wearing only his boxer shorts and smelled of dirt and oil. He told Ms. M to take him to his girlfriend's apartment. At his girlfriend's house, he realized he had burns on his hands, shins, and face and called 911. Paramedics took him to the hospital where he was treated for second-degree burns. While in the hospital, the appellant learned officers investigating the car fire had spoken to his girlfriend. Realizing he would be a suspect since he had second-degree burns, he made up a story that he was kidnapped by three armed men who forced him to burn his car. He told Ms. M that if the investigators questioned her, she should tell them he was kidnapped by armed men. Because of his burns, the appellant was placed on convalescent leave for approximately one month and did not work during that time period.

Detective H, an investigator with the nearby Glendale Police Department, began investigating the armed kidnapping and car fire. On 7 December 2006, Detective H interviewed the appellant at the police department. Agent D from the Air Force Office of Special Investigations (AFOSI) watched the interview from a room next door. During the interview, the appellant told Detective H that three unknown men kidnapped him at gunpoint and forced him to burn his vehicle.[1] At the conclusion of the interview, the appellant admitted that he was not kidnapped; however, he did not fully confess. At that point, Detective H told the appellant he would be turning the investigation over to the AFOSI. Agent D interviewed the appellant on 5 January 2007, at the conclusion of the appellant's convalescent leave. Initially, the appellant told Agent D that he was kidnapped by three unknown armed men who forced him to burn his car. By the end of the interview, the appellant confessed that he burned his own car with the intent to defraud the insurance company.

During the guilty plea inquiry regarding the specification of making a false official statement to Detective H, the military judge focused on the official capacity of Detective H in conducting his investigation. The military judge found the appellant guilty of all charges and specifications.

After closing the court for sentencing deliberations, the military judge determined the court should be reopened to flesh out additional details for the record with respect to the false official statement made to Detective H. The military judge directed the appellant be placed under oath and he reopened the *Care* inquiry.[2] After conducting the ad-

---

1. The statement to Detective H, that the appellant was kidnapped at gunpoint and forced to burn his vehicle, is the subject of this appeal.

2. *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969).

ditional guilty plea inquiry,[3] the military judge determined the statement was official and the facts supported the plea. There was no motion before the military judge challenging the specification, and the military judge continued to hold the statement was "official" and the plea provident.[4]

### Official Statement

The appellant argues the statements made to Detective H were not "official" and therefore his plea to Specification I of Charge II was improvident. We do not agree.

We will not set aside a guilty plea on appeal unless there is "a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 321 (C.A.A.F.2008). In contrast, questions of law arising during or after the plea inquiry are reviewed de novo. *Id.* If the "factual circumstances as revealed by the accused himself objectively support that plea," the factual predicate is established. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996) (citations omitted). We consider the entire record in conducting our review. *Inabinette*, 66 M.J. at 322; *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995).

Determination of what is an official statement is reviewed de novo. Article 107, UCMJ, states: "Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." A statement is "official" if that statement is "made in the line of duty." *Manual for Courts–Martial, United States (MCM)*, Part IV, ¶ 31.c.(1)

(2005 ed.); *United States v. Teffeau*, 58 M.J. 62, 68 (C.A.A.F.2003). Our superior court held that the *MCM* definition of "official" does not mean the President intended to limit "line of duty" in this context to the meaning those words may have in other, non-criminal contexts. *Teffeau*, 58 M.J. at 68. Our superior court recently restated that the scope of Article 107, UCMJ, is more expansive than its civilian counterpart, 18 U.S.C. § 1001, because "the primary purpose of military criminal law—to maintain morale, good order, and discipline—has no parallel in civilian criminal law." *United States v. Day*, 66 M.J. 172, 174 (C.A.A.F.2008) (quoting *Teffeau*, 58 M.J. at 68–69 (citations omitted)).

With respect to the appellant's primary argument that the statement made to a civilian detective was not "official," our superior court has rejected any absolute rule that statements to civilian law enforcement officials can never be official within the meaning of Article 107, UCMJ. *Teffeau*, 58 M.J. at 69. Further clarifying the law, our superior court in *Day* recently held that the critical question for determining whether a statement is "official" is whether the statement relates to the official duties of either the speaker or the hearer, and whether those official duties fall within the scope of the UCMJ's reach. *Day*, 66 M.J. at 174. Off-duty status of the servicemember is not determinative. *Id.* The Court noted "[t]here are a number of determinations made outside a servicemember's particular duties that nonetheless implicate official military functions, and thus the proscription against false official statements."[5] *Id.*

In *Day*, the appellant was charged with making false official statements to an off-base 911 dispatcher and to the responding firefighters after discovering his nine-week old child dead. Our superior court in *Day*

---

**3.** The additional inquiry was seventeen pages long in the record of trial.

**4.** In fact, when reviewing the pre-trial plea agreement, which stipulated that the defense would waive all waivable motions, the military judge asked the defense counsel if they had any motions. The defense counsel related they had considered two motions, but decided not to file either. One of the motions considered was a

motion regarding whether the statement to Detective H was "official."

**5.** One example cited by our superior court in *Day* is that "under the Federal Tort Claims Act, determinations regarding a servicemember's entitlements are official as are statements implicating the government's liability." *United States v. Day*, 66 M.J. 172, 174 (C.A.A.F.2008) (citations omitted).

held the statements made to civilian firefighters were "official" because the statements were made to members of the on-base fire department charged with performing an on-base military function pursuant to the commander's interest in and responsibility for the health and welfare of dependents residing in base housing. *Id.* at 175. The Court held that the false statements made to the civilian off-base 911 dispatch operator were not "official." *Id.* However, the Court noted in a footnote that statements to a 911 operator may be official "where, among other things, there is a predictable and necessary nexus to on-base persons performing *official* military functions on behalf of the command." *Id.* at 175 n. 4 (emphasis in original).

■ Additional factors to be considered in determining whether a statement is "official" include the circumstances leading up to the statement, the circumstances surrounding the statement, whether there is a military interest in the subject matter, and whether there exists a clear and direct relationship to military duties. *See Teffeau,* 58 M.J. at 69.

■ In the case at hand, the military judge identified a number of factors which resulted in his finding that the statement to Detective H was "official." The offenses were committed within a few miles of Luke AFB. Further, Detective H worked at the Glendale Police Department, near the base, and knew the appellant was a military member assigned to Luke AFB. The appellant also relied on an unwitting co-worker in carrying out his plan to set his car on fire by having the co-worker pick him up for work and later take him to the rental car office. In addition, the appellant's injuries, which he sustained while attempting to carry out his plan, resulted in his being placed on convalescent leave for approximately one month, and he did not work for this time period. Finally, prior to the interview, Detective H involved the AFOSI. An AFOSI agent witnessed the interview and immediately upon concluding the interview, Detective H turned the case over to the AFOSI.

This case was tried before our superior court decided *Day,* and so the military judge did not apply the reasoning in *Day* to his determination that the appellant's statement

to Detective H was official. However, during the *Care* inquiry, the military judge inquired extensively into the facts and circumstances surrounding the appellant's statements to Detective H. By drawing reasonable inferences from the *Care* inquiry, and applying the Court's analysis in *Day* to our de novo review, we conclude that the appellant's statement was official. *See United States v. Hardeman,* 59 M.J. 389, 391 (C.A.A.F.2004) (citations omitted).

First, we hold that the appellant's statement to Detective H relates to both his and Detective H's official duties, and both the appellant and Detective H's duties "fall within the scope of the UCMJ's reach." *Day,* 66 M.J. at 174. The appellant's statement related both to injuries requiring him to be put on convalescent leave and his employment of an unsuspecting fellow airman in perpetrating his crime. *Id.; Teffeau,* 58 M.J. at 69. For his part, Detective H was aware of the appellant's military status, he was aware that the case might be of interest to the military, and he turned the investigation over to his military counterpart—an AFOSI investigator—immediately following his interview of the appellant. *Day,* 66 M.J. at 174; *Teffeau,* 58 M.J. at 69; *cf. United States v. Morgan,* 65 M.J. 616, 620 (N.M.Ct.Crim.App.2007) (holding an appellant's false statements to civilian investigators were not "official" where investigators were not acting on behalf of the military and the military had no official interest in the investigation).

Second, we hold there is "a predictable and necessary nexus" between the appellant's statement to Detective H and the official functions of on-base personnel. *Day,* 66 M.J. at 175 n. 4. The appellant reported that he was the victim of a violent crime, that he sustained injuries because of that crime, and that the crime occurred in the same community as the appellant's base. Clearly, this report would be of great concern to the base commander and other on-base personnel responsible for the morale, health, and welfare of personnel assigned to the base. *Id.*

We find the military judge had an adequate factual basis to support the appellant's plea of guilty to making a false official state-

ment to Detective H. There is no substantial basis in law or fact to question the guilty plea of the appellant. The military judge did not abuse his discretion in finding the appellant guilty of Specification 1 of Charge II.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.