STUCKY, Judge
(dissenting):
The majority opinion undertakes to define the term “official statement,” as used in Article 107, UCMJ, 10 U.S.C. § 907 (2006), because “the law could benefit from increased clarity.” United States v. Spicer, 71 M.J. 470, 473 (C.A.A.F.2013). I agree that clarity is desirable. Unfortunately, the majority opinion instead adds more confusion to our admittedly less-than-clear jurisprudence on false official statements.
Our duty in interpreting a statute is to implement the will of Congress, “so far as the meaning of the words fairly permit[].” Sec. & Exch. Comm’n v. Joiner, 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943).
As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the ease. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.
Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quotation marks and citations omitted). Whether the statutory language is ambiguous is determined “by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). If the language of the statute is ambiguous, we may resort to the legislative history “[i]n aid of the process *476 of construction.” United States v. Great Northern Ry., 287 U.S. 144, 154, 53 S.Ct. 28, 77 L.Ed. 223 (1932).
Article 107 states: “Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.” 10 U.S.C. § 907 (2006) (emphasis added). By using the phrase “or makes any other false official statement,” Congress clearly expressed its will that the statute be broadly interpreted, see United States v. Day, 66 M.J. 172, 174 (C.A.A.F.2008) (citing United States v. Teffeau, 58 M.J. 62, 68-69 (C.A.A.F. 2003)), and that false official statements are not limited, as the majority insists, to “statements affecting military functions.” Spicer, 71 M.J. at 473.
Even if I were to conclude that the phrase “or makes any other false official statement” is ambiguous, resort to legislative history would not change my belief that Article 107 is not restricted to “statements affecting military functions.” The legislative history of Article 107 is very brief, consisting of a short commentary by the drafters:
[Article 107] consolidates A.W. 56 and 57. It is broader in scope in that it is not limited to particular types of documents, and its application includes all persons subject to this code.
The article extends to oral statements, and the mandatory dismissal for officers has been deleted.
Uniform Code of Military Justice: Hearings on H.R. 2198 Before a Subcomm. of the H. Comm, on Armed Servs., 81st Cong. 1230 (1949), reprinted in Index and Legislative History, Uniform Code of Military Justice (1950) (not separately paginated).
As noted by the majority, Article 107, UCMJ, is derived from Articles of War 56 and 57.[1] Spicer, 71 M.J. at 473. The majority is correct in noting that those “Articles of War were specifically intended to address the integrity of military functions.” Id. Article of War 56 prohibited an officer from knowingly making a false muster. See 41 Stat. at 800. Article of War 57 prohibited an officer whose duty it was to render a report on the state of the troops, arms, ammunition, or other property, from knowingly making a false report. Id. But the brief and ambiguous legislative history quoted above is hardly a basis from which to conclude that Congress meant to limit the scope of Article 107 to “statements affecting military functions.”
The majority claims that the “purpose of Article 107, UCMJ, is also derived from a parallel understanding of its civilian counterpart, 18 U.S.C. § 1001 (2006).” Spicer, 71 M.J. at 474. Section 1001(a), however, specifically restricts criminality for false statements to those made “in any matter within the jurisdiction of the executive, legislative, or judicial branch of Government of the United States.” Congress chose not to so limit Article 107. Had it wanted to, it could easily have done so by adding one word — military — between “false official” and “statement.” Congress knows how to do this and has done it in other parts of the UCMJ. See, e.g., Article 94(a), UCMJ, 10 U.S.C. § 894(a) (2006) (subsection (1) prohibits one acting in concert with another from refusing to obey orders with the intent to usurp military authority; subsection (2) prohibits one, acting in concert with another, from revolting with intent to overthrow lawful civil authority).
I conclude that Congress intended Article 107 to criminalize false statements made to civilian law enforcement agents acting in their official capacity. I would therefore affirm the judgment of the United States Army Court of Criminal Appeals.

. See National Defense Act Amendments, ch. 227, 41 Stat. 759, 800 (1920).