# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**JUAN A. GARCIA JR.**
**PRIVATE FIRST CLASS (E-2), U.S. MARINE CORPS**

**NMCCA 201400108**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 16 October 2013.
**Military Judge:** LtCol L.J. Francis, USMC.
**Convening Authority:** Commanding General, Training Command,
Quantico, VA.
**Staff Judge Advocate's Recommendation:** LtCol M.A. Sayegh,
USMC.
**For Appellant:** Maj John Stephens, USMC.
**For Appellee:** LT James Belforti, JAGC, USN; LT Ann Dingle,
JAGC, USN.


**14 May 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial consisting of officer and enlisted
members convicted the appellant, contrary to his pleas, of one
specification of attempt to commit sexual assault, two
specifications of abusive sexual contact, and one specification
of providing alcohol to a minor, in violation of Articles 80,
120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§

880, 920, and 934. The members sentenced the appellant to reduction to pay grade E-1, confinement for five months and twenty-nine days, and to receive a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant raised four assignments of error (AOE): (1) that trial counsel committed misconduct during his closing statement by vouching for the credibility of witnesses, arguing facts not in evidence, and calling upon the members to protect "junior female Marines"; (2) that the Government failed to prove beyond a reasonable doubt that the appellant's mistake of fact as to consent was not reasonable under the circumstances; (3) that civilian law enforcement failed to provide the appellant with rights warnings under Article 31(b), UCMJ; and (4) that the military judge committed plain error when he allowed a hearsay statement into evidence.[1] Additionally, this court specified the issue of whether the military judge abused his discretion in determining that the specifications involving abusive sexual contact were not an unreasonable multiplication of charges with the attempted sexual assault.

After careful consideration of the record of trial and the parties' pleadings, we set aside the appellant's conviction to Specification 2 of Charge I and Additional Charge I and its sole Specification and dismiss those offenses with prejudice. We conclude that the remaining findings and the reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and Lance Corporal (LCpl) AA were both students stationed at Marine Corps Combat Center in Twentynine Palms, CA. While there, LCpl AA traveled to Palm Springs, CA for weekend liberty with her "best friend" and fellow student, LCpl B.[2] The two female Marines were joined by three male Marines, LCpls M and Aa, and the appellant. LCpl AA knew LCpl M but had not previously met LCpl A or the appellant. Upon arriving in Palm Springs, the group rented a single room with two double beds at a local hotel. Once settled, the group consumed alcohol, went shopping, and socialized at the pool.

---

[1] AOEs 3 and 4 were submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have considered these AOEs and find them to be without merit. *United States v. Clifton,* 35 M.J. 79 (C.M.A. 1992).

[2] Record at 388.

The first night, LCpls M and AA shared one of the beds and the three remaining Marines shared the other.

The following day, the group went to the hotel pool, where LCpl AA sustained sunburn. After returning to the room, LCpl AA lay on the floor between the two beds and began applying aloe to her skin. The appellant offered to help her and she consented. The appellant rubbed the aloe on her legs and claims the touching turned sexual. LCpls B and A, both on one of the beds at the time watching a movie on a computer screen, testified that they observed the appellant performing oral sex on LCpl AA and then engaging in sexual intercourse with her. These two Marines also testified to seeing LCpl AA grab the appellant's arm and pull him into the bathroom, where the couple remained for 10-15 minutes. While in the bathroom, the appellant alleges that he and LCpl AA had vaginal intercourse until she asked him if they could stop and "finish later."[3] LCpl AA denied having any sexual contact with the appellant that afternoon. LCpl M was not in the room at the time of these events.

Later that evening, LCpl M was again sharing a bed with LCpl AA when the appellant came into the room and got into the same bed. LCpl M then moved to sleep on the floor because he believed that the appellant and LCpl AA were about to engage in sexual activity. LCpl M testified that he next heard a "disgruntled moan" and LCpl AA then got out of the bed and left the room.[4]

When interviewed over the telephone regarding the sexual activity, the appellant made the following statement to civilian law enforcement:

Q: Well, what happened in the middle of the night?
A: . . . I remember we were sleeping next to each other and she said do you mind -- I remember her saying "[d]o you mind if we finish this later?" So I tried enticing her by, like, biting her, scratching her, trying to get her into it. And we did and she (inaudible).

Q: She said what?
A: She said no. Not no, but I thought she was playing around. I was like – she wasn't really, like, trying to push me off. She was, like, Ooh. And she was like, okay.

---

[3] Prosecution Exhibit 3 at 5.

[4] Record at 318, 323.

3

But I kept trying to poke at it. . . . And then she woke up,
she went outside.  I went outside.  And I said, like, are we
going to do anything tonight?  She said no.  I was like,
okay, and I went back.

Q: So you never -- at night you never put your fingers
inside of her vagina?
A:  No, I didn't do anything like that.

Q:  You never put your penis even anywhere close to her in
the middle of the night?
A:  There was no insertion, nothing near her (inaudible).
It was just me biting her trying to entice her.

. . . .

Q:  [W]as she asleep when you were, like biting on her neck
and stuff?
A:  Yes, she was.[5]

Conversely, LCpl AA testified that after falling asleep, she
was partly awoken by the appellant's "hand on top of [her]
shorts rubbing [her] vagina."[6]  LCpl AA pushed the appellant's
hand away and fell back into a deep sleep.  Next, LCpl AA
claimed she woke up and felt the appellant's finger inside of
her vagina, to which she responded by saying "uh uh" and trying
to "manipulate his hand to inflict pain so maybe he would stop."[7]
LCpl AA claimed the appellant said "no matter how bad you fight
it, I'll still get mine,"[8]  Finally, LCpl AA testified that she
awoke to the appellant's penis in her vagina and immediately got
out of bed and left the room.  The appellant followed and,
according to LCpl AA, admitted that "At one point in time , I
felt like I was raping you."[9]  The two went back into the room
and went to sleep on different beds.

The following morning, LCpls AA and M left the room,
whereupon LCpl AA told LCpl M that "when she woke up, he was

---

[5] PE 3 at 5, 7.

[6] Record at 218.

[7] *Id.* at 219.

[8] *Id.* at 220.

[9] *Id.* at 224.

4

inside of her."[10]  After returning to the room, LCpl AA asked
LCpl B to go with her to a local store.  LCpl B testified that,
while walking to the store, LCpl AA confided that she and the
appellant had sex, including in the bathroom, and that LCpl AA
was "uncomfortable and she regretted it."[11]

The group then called for a shuttle van to return to their
base.  When the van arrived, LCpl AA sat in the back seat with
the appellant.  At one point, LCpl AA was asleep on the
appellant's shoulder and at another she was asleep with her head
in his lap.  Five days after the assault, LCpl AA made an
unrestricted report.

The members found the appellant guilty of attempted sexual
assault, abusive sexual contact by kissing and biting AA's neck
while she was asleep, abusive sexual contact by "touch[ing]
[AA's] vaginal area," and wrongfully providing alcohol to
minors.[12]  Additional facts necessary to resolve the assigned
errors are included below.

## Unreasonable Multiplication of Charges

Although not raised by the parties, we begin with a
discussion on whether the sexual offenses of which the appellant
was convicted represent an unreasonable multiplication of
charges.  The doctrine of unreasonable multiplication of charges
stems from "those features of military law that increase the
potential for overreaching in the exercise of prosecutorial
discretion."  *United States v. Quiroz*, 55 M.J. 334, 337
(C.A.A.F. 2001).  To determine whether there has been an
unreasonable multiplication of charges, we consider five
factors: (1) did the appellant object at trial; (2) are the
charges aimed at distinctly separate criminal acts; (3) do the
charges misrepresent or exaggerate the appellant's criminality;
(4) do the charges unreasonably increase the appellant's
punitive exposure; and (5) is there any evidence of
prosecutorial overreaching or abuse in the drafting of the
charges and specifications?  *United States v. Quiroz*, 57 M.J.
583, 585 (N.M.Ct.Crim.App. 2002) (*en banc*), *aff'd*, 58 M.J. 183
(C.A.A.F. 2003) (summary disposition).

---

[10] *Id.* at 320.

[11] *Id.* at 382.

[12] *Id.* at 559.

In deciding issues of unreasonable multiplication of charges, we also consider RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), which states: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." In considering all of these factors, we grant appropriate relief if we find "the 'piling on' of charges so extreme or unreasonable as to necessitate the invocation of our Article 66(c), UCMJ, authority [to affirm only such findings of guilty and so much of the sentence as we find correct in law and fact and determine, on the basis of the entire record, should be approved]." *Quiroz*, 57 M.J. at 585 (citation and internal quotation marks omitted); *see also United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion. *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004).

After the members returned their findings, the parties discussed the issue of unreasonable multiplication of charges. The Government initially conceded that, for sentencing purposes, "the attempt to penetrate is multiplicious [sic] with one of the abusive sexual contacts."[13] However, the military judge disagreed, finding that the three acts were not a "continuous course of conduct because each one is separated by some intervening circumstance. Such as on the first occasion, she is still asleep and doesn't even recognize what is going on. On the second occasion, she feels what's going on and awakes and reacts. On the third occasion, she awakes once again and reacts. So that seems to me . . . three distinctly separate criminal acts, which aren't made multiplicious [sic] by the other factors."[14] Under the circumstances of this case, and based upon the findings of the members, we disagree.

We are unpersuaded that these three "acts" are sufficiently distinct so as to justify three separate criminal convictions. Instead, the evidence indicates that the appellant climbed into bed with LCpl AA and, in the moments that followed, attempted to engage in sexual intercourse with her. In the course of this attempt, the appellant kissed LCpl AA's neck, touched her vaginal area with his hand, and touched LCpl AA's vaginal area with his penis. Shortly thereafter, LCpl AA got out of bed and left the hotel room.

---

[13] *Id.* at 565.

[14] *Id.* at 567.

We conclude that the appellant's conduct was "substantially one transaction" and are not convinced that the reasonable path is to break this single course of conduct down and permit the appellant to stand convicted of three individual sexual offenses. Doing so exaggerates the appellant's criminality and unreasonably increased the appellant's punitive exposure. *See United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (noting that "one or more [*Quiroz*] factors may be sufficiently compelling, without more, to warrant relief on unreasonable multiplication of charges[.]").

Accordingly, we will invoke our authority under Article 66(c), UCMJ. Since the gravamen of the appellant's misconduct was attempted sexual assault, we will dismiss Specification 2 (kissing and biting AA's neck) of Charge I and Additional Charge I and its specification (touching her vaginal area).

## Legal and Factual Sufficiency

The appellant argues that the Government failed to prove beyond a reasonable doubt that the appellant's mistake of fact as to consent was neither honest nor reasonable. Therefore, the appellant argues that the evidence is factually and legally insufficient to support a conviction.

In accordance with Article 66(c), UCMJ, this court must examine each case for legal and factual sufficiency. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *United States v. Day*, 66 M.J. 172, 173–74 (C.A.A.F. 2008). To find the evidence factually sufficient, we, ourselves, having weighed the evidence in the record of trial and making allowances for not having personally observed the witnesses, must be convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

The history of the mistake of fact has historically applied to sexual assault cases. In 2006, Congress created a statutory affirmative defense of "mistake of fact as to consent" for certain sexual offenses, including sexual assault. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), App. 28, at A28-1, A28-5. Shortly thereafter, R.C.M. 916 was amended accordingly to limit the mistake of fact as to consent defense to those same offenses. *See* R.C.M. 916(j)(3). However, after aspects of the

statute's burden shifting process were found to be unconstitutional, Congress revised Article 120, removing from the statute the language that discussed mistake of fact and authorizing an accused to raise any defense available. *See* MCM, App. 23, at A23-15.[15]

One of these defenses is the standard mistake of fact defense, which affords the accused an affirmative defense if the mistaken belief relates to an element of the offense. *See* R.C.M. 916(j)(1). The latest Article 120(b)(2), which the appellant was convicted of attempting to commit, criminalizes the commission of a sexual act "upon another person when the [accused] knows or reasonably should know that the other person is asleep[.]" The military judge therefore instructed the members that the elements of Article 120(b)(2) are twofold: first, that the appellant penetrated LCpl AA's vulva with his penis; and second, that he did so when he knew or reasonably should have known that LCpl AA was asleep.[16] In that consent does not vitiate any aspect of either of these two elements, several commentators have opined that mistake of fact as to consent would be inapplicable to this charge under current law.[17]

However, it is not necessary for us to resolve that question because, even if we were to assume, *arguendo*, that mistake of fact could apply to an offense under Article 120(b)(2), we are satisfied beyond a reasonable doubt that any mistake was unreasonable.

---

[15] R.C.M. 916(j)(3) has not been modified to reflect the change to Article 120, UCMJ, offenses.

[16] The military judge instructed the members on mistake of fact as to consent as it relates to Specification 1 of Charge I and the lesser included offense of attempt.

[17] *See* Jim Clark, *Analysis of Crimes and Defenses 2012 UCMJ Article 120*, effective 28 June 2012, 2012 Emerging Issues (LEXIS) 6423 (Jun 25, 2012) (opining that the 2012 Article 120 removed mistake of fact as to consent as a defense to most charges and that mistake of fact only applies to elements of the crime); Major Mark Sameit, USMC, *When a Convicted Rape is Not Really a Rape: The Past, Present, and Future Ability of Article 120 Convictions to Withstand Legal and Factual Sufficiency Reviews*, 216 MIL. L. REV. 77, 117 (2013) (opining that the Government's burden to prove the elements of this offense eliminates the affirmative defense of mistake of fact); Zachary D. Spilman, *Consent and Mistake of Fact as to Consent: Defenses to Adult Sexual Offenses under the Uniform Code of Military Justice*, 2014 Emerging Issues (LEXIS) 7277 (Nov. 26, 2014) (noting that since Article 120(g)(8)(B) states that "a sleeping . . . person cannot consent[,]" then "an accused cannot claim that the other person was both [sleeping] and consenting.").

The appellant claims that his mistake of fact stems from his consensual sexual encounter with LCpl AA earlier in the bathroom.  Specifically, since LCpl AA asked the appellant if they could "stop and finish later," he believed that she consented to his attempts to entice her later that evening while she was sleeping.  However, the appellant's argument ignores his admission to law enforcement that, once he began his efforts to entice LCpl AA, she "said no . . . but I kept trying to poke at it."  "[A] voluntary confession of guilt is among the most effectual proofs in the law, and constitutes the strongest evidence against the party making it that can be given of the facts stated in such confession." *United States v. Ellis*, 57 M.J. 375, 381 (C.A.A.F. 2002) (citation and internal quotation marks omitted).  This admission alone, wherein the appellant admits that LCpl AA woke up and manifested her lack of consent to his actions, is sufficient to convince us that any mistaken belief on his part that she consented to his actions was unreasonable.  Therefore, we are convinced of the appellant's guilt beyond a reasonable doubt and find his conviction to be factually and legally sufficient.

## Prosecutorial Misconduct

The appellant also contends that the trial counsel committed misconduct by engaging in improper argument on findings.  Since defense counsel did not object to the argument at trial, we review the trial counsel's arguments for plain error. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

The appellant avers that during closing arguments, the trial counsel referred to the defense theory of the case as "asinine," vouched for the credibility of LCpl AA and Government witnesses, argued facts not in evidence, and implicitly commented upon the appellant's failure to take the stand.  Finally, in his closing comments to the members during his rebuttal argument, the trial counsel urged the members to find the appellant guilty because "the accused needs to be held accountable for what he did.  He absolutely does.  And when you think about our junior female Marines in the Marine Corps, a situation like this, is exactly what (inaudible)."[18]

"An accused is supposed to be tried and sentenced as an individual on the basis of the offense(s) charged and the legally and logically relevant evidence presented." *United*

_____
[18] Record at 543-44.

9

*States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007). Prosecutorial misconduct thwarts that principle, and "it is error for trial counsel to make arguments that unduly . . . inflame the passions or prejudices of the court members." *Id.* at 58 (citations and internal quotation marks omitted). The trial counsel is also prohibited from injecting into argument irrelevant matters, such as personal opinions and facts not in evidence. *Id.* (citing *Fletcher*, 62 M.J at 180); R.C.M. 919(b) Discussion.

Assuming that the trial counsel's comments constituted error, we will assess that error for prejudice. In doing so, "[w]e look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" *United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007) (citation and internal quotation marks omitted). In *Fletcher*, the Court of Appeals for the Armed Forces explained that the "best approach" to determining prejudice arising from prosecutorial misconduct involves balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184. Prosecutorial misconduct "will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

We are troubled most by the trial counsel's attempt to invoke within the members a duty to protect "junior female Marines" by finding the appellant guilty. This was plain error that the military judge had a *sua sponte* duty to correct. However, in this case, the third *Fletcher* factor weighs so heavily in favor of the Government that we are confident the appellant was convicted on the basis of the evidence alone. Specifically, we note that the appellant's attempted sexual assault conviction was based not upon what LCpl AA alleged happened (penetration), but the conduct to which the appellant confessed ("I kept trying to poke at it"). Thus, we are satisfied that the appellant's confession renders harmless any error by the trial counsel or any failure on the military judge's part to take measures to correct those errors.

### Sentence Reassessment

Reassessing the sentence by applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11,

10

15-16 (C.A.A.F. 2013), we are confident the members would have adjudged the same sentence.

First, we note that our action reduces the maximum confinement the appellant faced from 34 years and six months to 20 years and six months and a dishonorable discharge. However, the members sentenced the appellant to only five months and 29 days and a bad-conduct discharge. We also note the gravamen of the offense remains the same: the attempted sexual assault. Finally, this court reviews the records of a substantial number of courts-martial involving sexual assault of the nature alleged in this case, and we have extensive experience with the level of sentences imposed for such offenses under various circumstances. Upon reassessment, we conclude that the sentence as adjudged and approved is appropriate.

## Conclusion

The findings as to Specification 2 of Charge I and Additional Charge I and its sole specification are set aside and dismissed with prejudice. The finding as to Specification 1 of Charge I and Additional Charge II and its specification, as well as the sentence as reassessed, are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

11