# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.C. RUGH**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## JEREMY A. MEADOWS
### STAFF SERGEANT (E-6), U.S. MARINE CORPS

### NMCCA 201400401
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 16 June 2014.
**Military Judge:** LtCol Leon J. Francis, USMC.
**Convening Authority:** Commanding General, 3d Marine Aircraft Wing, MCAS Miramar, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Col D.K. Margolin, USMC.
**For Appellant:** Maj Jason R. Wareham, USMC; LT Jacqueline Leonard, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN.

### 31 August 2015

```
---------------------------------------------------------
             OPINION OF THE COURT
---------------------------------------------------------
```

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of two specifications of violating a general order by engaging in unduly familiar relationships with subordinates, one specification of committing an indecent act, one specification of pandering by enticing an act of prostitution, and three specifications of adultery in violation of Articles 92, 120, and

134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 934. The members sentenced the appellant to confinement for a period of 18 months, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises three assignments of error (AOE): that his convictions for indecent conduct, pandering and adultery were legally and factually insufficient.[1]

After careful consideration of the record of trial, the parties' pleadings, and the appellant's AOEs, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

Beginning in March 2011, the appellant embarked on a series of adulterous relationships with three civilian women: MT, BC, and SP.

MT met the appellant through an online advertisement for "swingers parties," a shared lifestyle interest that eventually morphed into a mutual enterprise in which the appellant and MT would rent hotel rooms, solicit male and female attendees, collect a "cover charge" and provide security. During these sex parties, the appellant and MT would engage in sexual activity in front of and with other attendees. Outside of these parties, the appellant and MT maintained an ongoing sexual relationship. Additionally, MT attended the November 2011 Marine Corps Ball with the appellant, meeting several members of appellant's command and their respective dates.

BC also met the appellant online. Although initially warned away by the appellant's wife, BC moved into the appellant's on-base residence, serving as housecleaner, babysitter, and paramour until the arrival of SP and her children in May 2012. BC routinely socialized with junior members of the appellant's unit and was referred to as his "girlfriend." BC was aware of the appellant's sex parties and of his sexual activity with other women, including an occasion when BC discovered the appellant and SP indiscreetly coupling in the on-base residence's kitchen.

---

[1] AOEs I-III are raised summarily pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

While the appellant was still living with BC, he rekindled a prior relationship with SP and invited her and her children to move in with him, replacing BC. Once together with the appellant, SP became active in the sex party lifestyle as well. SP routinely attended command functions and knew many of the Marines with whom appellant worked. Both in person and online, SP held herself out as the appellant's girlfriend and soon-to-be wife, stymied only by the appellant's existing marriage and child custody dispute.

The appellant remained married during these relationships, and MT, BC, and SP were all aware that the appellant was married. While geographically distant - his wife lived outside California - the appellant alternately attempted legal separation and reconciliation during the time of his extra-marital relationships.

Then-Lance Corporal (LCpl) TK reported to Marine Heavy Helicopter Squadron 462 in July 2011. Not wholly satisfied with her immediate supervisor in the S-2 Division, LCpl TK sought out a mentor among the staff noncommissioned officers within the other divisions. She selected the appellant, and they struck up a close relationship. Over time the appellant invited LCpl TK to a private dinner at his house, enjoined her to engage in sexual activity with him while on duty, and introduced her to the idea of making extra money working at one of his sex parties.

On 4 November 2011 the appellant, MT, LCpl TK and two other male Marines, then-Private First Class (PFC) NT and then-LCpl DZ, attended the Marine Corps Ball at a hotel in downtown San Diego. At the end of an evening in which LCpl TK, LCpl DZ and PFC NT imbibed heavily, these five returned to the appellant's hotel room. After temporarily excusing themselves from the living area, the appellant and MT returned to find the three junior Marines engaged in sexual activity together.

Showing particular concern for LCpl TK's intoxication level, the appellant asked "Hey, is everything OK in here?" LCpl TK responded, "[y]ea, we are just playing around." LCpl DZ added, "[y]es, staff sergeant, everything is OK."[2] PFC NT said nothing but looked to appellant with some concern that the appellant would be upset at this affair. Contrarily, the appellant and MT said nothing, sat across from the bed, and watched.

---

[2] Prosecution Exhibit 1 at 1.

Several minutes later PFC NT stated, "I can't do this," dressed and left the room.[3]  Shortly thereafter, an impatient appellant asked LCpl DZ and LCpl TK to "hurry up" their activity.[4]  The tryst then ended, and LCpl TK and LCpl DZ left the room.

In March 2013, the Naval Criminal Investigative Service recorded a "pretext" phone call between the appellant and LCpl TK during which the appellant elaborated on the pay scale for participation in the aforementioned sex parties.

> It depends on what you want to do.  I mean, and then that determines how much you get paid. . . . [I]f you decide that you want to actually play around and do adult stuff and everything like that, then you can get up to 250, $300 in a night or more.[5]

When confronted on these admissions during his subsequent interrogation, the appellant asserted that his offer was solely a ruse to engage in sexual activity with LCpl TK.

### Legal and Factual Sufficiency

We review issues of legal and factual sufficiency *de novo*. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007).

We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt."  *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citation omitted), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).

In the specification under Charge II, the appellant was charged using an "aider and abettor" theory of liability for

---

[3] *Id.*

[4] Record at 385.

[5] PE 7 at 14.

4

encouraging LCpl DZ and LCpl TK to engage in sexual conduct in front of PFC NT and MT.[6]

According to the explanation to Article 77, UCMJ, for a person to be guilty as a principal under an aiding and abetting theory, he must:

> (i) Assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense; and,
>
> (ii) Share in the criminal purpose of design.
>
> . . . In some circumstances, inaction may make one liable as a party, where there is a duty to act. If a person . . . has a duty to interfere in the commission of an offense, but does not interfere, that person is a party to the crime *if* such a noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.[7]

The crime of aiding and abetting through nonperformance of a duty has four components: "(1) duty (the accused has 'a duty to act'); (2) inaction (the accused 'has a duty to interfere in the commission of an offense, but does not interfere'); (3) intent (the "noninterference is intended to . . . operate as an aid or encouragement to the actual perpetrator" of the underlying crime); and, (4) effect on the perpetrator (the "noninterference . . . does operate as an aid or encouragement to the actual perpetrator'"). *United States v. Simmons*, 63 M.J. 89, 94 (C.A.A.F. 2006) (Effron, J, concurring in the result).

"Each of these components is essential. Regardless of whether the prosecution demonstrates duty, inaction, and intent, that is insufficient if the inaction does not actually aid or encourage the perpetrator." *Id*.[8]

---

[6] Specification: In that [appellant], on active duty, did, at or near San Diego, California, on or about 4 November 2011, wrongfully commit indecent conduct, to wit: penetrating with the penis of [LCpl DZ], the vagina of [LCpl TK], while in the presence of [PFC NT] and [MT].

[7] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 1(b).

[8] The members were instructed:

> The prosecution has alleged that the accused was a principal in the offense for failure to intervene in the sexual act between

In this case, the appellant, a staff noncommissioned officer (NCO), had a duty to intervene in the indecent conduct between LCpl DZ, LCpl TK and PFC NT, and he failed to do so. *See id* at 93 (citing Navy and Marine Corps regulations and 230 years of custom and tradition to create a duty for an NCO to intervene in the commission of a crime against a member of the same unit). It is clear that appellant's intent in this regard was to enjoy "free porno," which he did until he grew tired.[9] His failure to intervene operated as an encouragement to the junior Marines as evidenced first by PFC NT's expression of concern when appellant returned to the main room, then by LCpl DZ's and LCpl TK's responses to the appellant's inquiry whether they were "OK," and finally by the junior Marines' prompt obedience once the appellant asked them to "hurry up." Under such circumstances, we find ample evidence to conclude the finding of guilt as an aider and abettor was both legally and factually sufficient.

Likewise, applying the tests for legal and factual sufficiency to the remaining charges, we are convinced that the evidence was both legally and factually sufficient. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

then [LCpl DZ] and [LCpl TK] in the presence of [PFC NT] and [MT], after he allegedly confronted them. In order for an appellant to be liable as a principal for failure to intervene, you must be convinced beyond a reasonable doubt that: One the appellant has a duty to act; Two the appellant had a duty to interfere in the commission of an offense, but did not interfere; Three the noninterference was intended to operate as an aid or encouragement to the actual perpetrator of the underlying crime; and, Four the noninterference did operated as an aid or encouragement to the actual perpetrator. Each of these components is essential.

Record at 1036.

[9] *Id.* at 382.