# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 201600133

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### WILLIAM A. SHIELDS III
Aviation Boatswain's Mate (Equipment) Third Class (E-4),
U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Heather Partridge, JAGC, USN.
Convening Authority: Commanding Officer, USS HARRY S.
TRUMAN (CVN 75).
Staff Judge Advocate's Recommendation: Lieutenant Commander
Ryan M. Anderson, JAGC, USN.
For Appellant: Lieutenant R. Andrew Austria, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Captain Sean M. Monks, USMC.

———————————————

Decided 31 January 2018

———————————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

HUTCHISON, Senior Judge:

A special court-martial composed of members with enlisted representation convicted the appellant, contrary to his pleas, of two specifications of violating the Navy's sexual harassment instruction, and two specifications of abusive sexual contact, in violation of Articles 92 and 120,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 920 (2012).[1] The convening authority (CA) approved the adjudged sentence of a bad-conduct discharge.[2]

In an opinion issued on 27 June 2017, we set aside the guilty findings for both abusive sexual contact specifications, set aside the sentence, and affirmed the appellant's convictions for violating a general order—the Navy's sexual harassment instruction. On 27 July 2017, the appellant filed a combined Motion to Attach, Motion for Reconsideration, Motion to File Supplemental Assignment of Error, and Motion for Leave to File. The common theme in each of the appellant's motions was that the general order he was convicted of violating, SECNAVINST 5300.26D issued on 3 January 2006, was not in effect on the date alleged in each of the appellant's Article 92, UCMJ, specifications by virtue of a self-canceling provision within SECNAVINST 5215.1E, issued on 28 October 2014. On 31 October 2017, we granted the appellant's request for reconsideration, and specified two additional issues related to the appellant's Supplemental Assignment of Error.[3] Upon reconsideration, we withdraw our 27 June 2017 opinion and issue this opinion in its place.

The appellant alleges four assignments of error (AOE), and as noted above, we specified two additional issues upon reconsideration. For ease of reading, the AOEs and specified issues are numbered consecutively:[4] (1) the military judge committed plain error when she instructed the members on reasonable doubt; (2) the military judge erred in denying the appellant's motion to dismiss Charge II, Specification 3, which fails to state an offense; (3) the abusive sexual contact in Charge II, Specification 3, is factually and legally insufficient; (4) in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the military judge's admission of charged sexual misconduct pursuant to MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 413, SUPPLEMENT TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and subsequent instructions violated the appellant's due process rights; (5) the revision and self-canceling provisions of paragraph 4.e of SECNAVINST 5215.1E applied

---

[1] The members acquitted the appellant of an additional sexual harassment specification, and four additional abusive sexual contact specifications.

[2] Commander, Naval Air Force Atlantic took action on the sentence pursuant to RULE FOR COURTS-MARTIAL 1107(a), MANUAL FOR COURTS-MARTIAL (2012 ed.) following a request from the CA after USS HARRY S. TRUMAN deployed.

[3] "Whether Specifications 1 and 2 of Charge I fail to state an offense in light of the self-canceling provisions contained in SECNAVINST 5215.1E and OPNAVINST 5215.17A." Appellant's Motion to Attach; Motion for Reconsideration; Motion to File Supplemental Assignment of Error; and Motion for Leave to File of 27 Jul 17 at 4.

[4] We have renumbered the AOEs.

to SECNAVINST 5300.26D of 3 Jan 2006, despite no clear declaration in SECNAVINST 5215.1E canceling, exempting, or otherwise addressing then-existing SECNAV directives that had reached their "7-year anniversary"; and (6) SECNAVINST 5300.26D of 3 Jan 2006 was not under "revision" as defined in SECNAVINST 5215.1E at any time during the period from 28 October 2014 through 30 June 2015.

Having been resolved by our superior court,[5] we summarily reject the first AOE. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992). Regarding the second and third AOEs, we find that the military judge did not err in denying the appellant's motion to dismiss, and that the specification is factually and legally sufficient. Regarding the fifth AOE, we conclude that SECNAVINST 5300.26D had not been cancelled and was, therefore, a valid lawful order.[6] However, we find merit in the fourth AOE, conclude that the error was not harmless beyond a reasonable doubt, and take corrective action in our decretal paragraph.

## I. BACKGROUND

The appellant served with Airman (AN) BH and Airman Recruit (AR) KC aboard USS HARRY S. TRUMAN (CVN 75). While underway during June 2015, the appellant made repeated sexual advances towards both AN BH and AR KC: talking about their bodies, their relationships, his sexual desires, and trying to kiss them.

At trial, AN BH testified that on one occasion, the appellant approached her in a lounge area while she was sitting in a rolling chair with her feet up. The appellant grabbed her left hand and placed it on his "[c]rotch area."[7] AR KC testified that the appellant approached her, began talking with her, and then "grabbed [her] belt and pulled [her] toward him, and asked [her] if [she] would give in yet [sic] to him."[8] AR KC further testified that she was wearing her coveralls uniform, and that the appellant pulled her towards him by her belt buckle with "a lot" of force.[9] AR KC told the appellant "no," grabbed his hand, took it off of her, and walked away.

---

[5] *See United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017) (finding no no error in the use of the same challenged instruction).

[6] This conclusion renders moot the sixth AOE.

[7] Record at 430.

[8] *Id.* at 480. When asked again what comment the appellant made when he pulled on her belt, AR KC responded, "[c]an I have her yet," which she understood to mean that the appellant "wanted to get with [her]." *Id.*

[9] *Id.*

Following the presentation of evidence, the civilian defense counsel made a motion, pursuant to RULE FOR COURTS-MARTIAL (R.C.M.) 917, MANUAL FOR COURTS-MARTIAL (2012 ed.), for a not guilty finding for Charge II, Specification 3, arguing that it failed to state an offense.[10] The military judge denied the motion, finding that "person to person physical contact" was not required and that the offense charged in the specification—"pulling her body close to his body by her belt buckle"—was sufficient to state an offense.[11]

Before closing arguments, and consistent with an earlier MIL. R. EVID. 413 ruling permitting the use of charged sexual misconduct as propensity evidence for other charged sexual misconduct, the military judge instructed the members:

> If you determine, by a preponderance of the evidence, that a charged offense from Specifications 1 through 6 of Charge II occurred, even if you're not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may, nonetheless, then consider the evidence of that offense for its bearing on any other matter to which it is relevant only in relation to Specifications 1 through 6 of Charge II.
>
> You may consider the evidence of such other charged acts of sexual assault for their tendency, if any, to show the accused's propensity or predisposition to engage in abusive sexual contact.[12]

The military judge took judicial notice that SECNAVINST 5300.26D of 3 January 2006, the Navy's sexual harassment instruction, was a lawful general regulation; the appellant's civilian defense counsel (CDC) affirmatively indicated he had "no objections."[13] Consequently, the military judged instructed the members: "As a matter of law, the regulation in this case, as described in the specification, is a lawful general regulation . . . it applies to [the appellant] even if he was unaware of its existence."[14]

---

[10] The civilian defense counsel originally styled his motion as a motion for a "directed verdict," arguing that because there had been no contact, the motion should be granted. *Id.* at 581. The trial counsel clarified, and the defense counsel conceded, that he understood the argument to really be that the specification did not allege an offense.

[11] Record at 583.

[12] *Id.* at 616-17.

[13] *Id.* at 250-51 ("MJ: Does the defense have any objection to . . . Appellate Exhibit XXXI, which is the Request for Judicial Notice of the SECNAV instruction? CDC: No, Your Honor. No objections.").

[14] *Id.* at 600.

## II. DISCUSSION

### A. Failure to state an offense

Charge II, Specification 3, alleged the appellant committed abusive sexual contact upon AR KC by:

> grabbing her belt buckle with his hand, pulling her body close to his body, and stating "are you going to let me in yet," or words to that effect, by causing bodily harm to her, to wit: grabbing her belt buckle and pulling her body.[15]

The appellant avers that because the specification does not "plead *with specificity* which body part of [AR KC], either directly or through the clothing, that [the appellant] had touched[,]" it does not state an offense.[16] We disagree.

Whether a charge and specification state an offense is a question of law that we review *de novo. United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). A specification states an offense if it alleges, either expressly or by implication, every element of the offense, so as to give the accused notice and protection against double jeopardy. *Id.* (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)); *see also* R.C.M. 307(c)(3).[17] When a specification does not expressly allege an element of the intended offense, appellate courts must determine whether the element was necessarily implied. *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011). "[W]hen the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text." *Id.* (citation omitted). Although "[t]he interpretation of a specification in such a manner as to find an element was alleged by necessary implication is disfavored[,]" the "law still remains that there is no error when a specification necessarily implies all the elements of an offense." *United States v. Hunt*, 71 M.J. 538, 538-39 (N-M. Ct. Crim. App. 2012) (en banc) (citing *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012)).

---

[15] Charge Sheet.

[16] Appellant's Brief of 7 Oct 2016, at 19 (emphasis in original).

[17] *See also United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (finding plead charges are sufficient if they "'first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'") (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (alterations in original) (additional citations omitted).

The pertinent elements of Article 120(d), UCMJ, abusive sexual contact, as incorporated from Article 120(b)(1)(B), UCMJ,[18] are: (1) that the appellant committed a sexual contact upon AR KC, and (2) that he did so by causing bodily harm to AR KC. In pertinent part, sexual contact is:

> (A) touching or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with the intent to abuse, humiliate, or degrade any person; or (B) any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desires of any person[.]

Article 120(g)(2), UCMJ.

We are satisfied that the specification alleges either expressly or by implication every element of abusive sexual contact. "Touching" in the context of Article 120, UCMJ, "means that contact was made either by an object or by a body part." *United States v. Schloff*, 74 M.J. 312, 314 (C.A.A.F. 2015). In *Schloff*, the Court of Appeals for the Armed Forces (CAAF) concluded that a medical provider's use of a stethoscope to perform an unnecessary breast exam on a patient constituted abusive sexual contact, despite no actual body-to-body contact. The CAAF recognized that "object-to-body contact is not excluded from the scope of Article 120(g)(2), UCMJ[.]" *Id.* Likewise, the definition of bodily harm, in Article 120(g)(3), UCMJ, provides clear notice that the touching must be offensive and includes nonconsensual sexual contact.

The specification at issue here pleads the offensive acts—grabbing AR KC's belt buckle and pulling her body—resulting in bodily harm. The clear implication of grabbing someone by the belt and pulling them is that the belt necessarily made contact with the waist, hips, or back. That the specification does not specifically list the body parts the belt touched when the appellant grabbed and pulled on the buckle is of no import, because "[a] specification is sufficient so long as [the elements] may be found by reasonable construction of other language in the challenged specification." *United States v. Russell*, 47 M.J. 412, 413 (C.A.A.F. 1998) (citations and internal quotation marks

---

[18] Article 120(d), UCMJ, states: "Any person subject to this chapter who commits or causes sexual contact upon or by another person, if to do so would violate subsection (b) (sexual assault) had the sexual contact been a sexual act, is guilty of abusive sexual contact and shall be punished as a court-martial may direct." Consequently, we incorporate the elements of Article 120(b)(1)(B), UCMJ, for this abusive sexual contact offense.

omitted) (second alteration in original).[19] Given a "reasonable construction" of the specification's language, and the common understanding of where on the body, and in what manner, a belt is worn, the appellant had notice of which body parts he touched. Moreover, the language in the specification "are you going to let me in yet" implies the appellant's contact was done with the intent to arouse or gratify his or AR KC's sexual desires.[20] Therefore, although we read the specification narrowly, we conclude that the language put the appellant on notice and protected him from a subsequent prosecution for the same offense.

## B. Factual and legal sufficiency

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325; Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

After carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are convinced that a reasonable factfinder could have found the appellant committed abusive sexual contact against AR KC and AN BH. Furthermore, weighing all the

---

[19] In *Russell*, stating in the specification that an officer "wrongfully" possessed child pornography was sufficient to imply the element of "knowledge" under 18 U.S.C. § 2252(a). 47 M.J. at 412. *See also Crafter*, 64 M.J. at 210, 212 (finding that stating a prison guard accepted money "for" an inmate to meet with his girlfriend was sufficient to imply the "intent to influence or induce an official act" required for a bribery specification).

[20] Charge Sheet.

evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.[21]

## C. Propensity instruction

The appellant faced six specifications of abusive sexual contact against four different women. In addition to the two specifications involving AN BH and AR KC, for which he was convicted, the appellant was also charged with an additional abusive sexual contact specification involving each Sailor during June 2015, and two abusive sexual contact specifications against two other Sailors when he was temporarily assigned to USS DWIGHT D. EISENHOWER (CVN 69) in July 2012.

Consistent with the state of the law at that time, the military judge found evidence of each alleged abusive sexual contact admissible as propensity evidence for the other alleged abusive sexual contacts. Consequently, and without objection, the military judge instructed the members that if they found, by a preponderance of the evidence, that any of the charged abusive sexual contacts occurred, then they could consider that evidence to show the appellant's "propensity or predisposition to engage in abusive sexual contact."[22]

In *Hills*, the CAAF held that using evidence of charged sexual misconduct as propensity evidence relevant to other charged sexual misconduct is inconsistent with an accused's right to presumed innocence. 75 M.J. at 357. Applying *Hills* to this case, it is clear that the military judge erred. Where an instructional error rises to a constitutional dimension, we review the error to determine if it was harmless beyond a reasonable doubt. *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005). A constitutional error is harmless if "it appears 'beyond a reasonable doubt if the error complained of did not contribute to the verdict obtained.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). In other words, "[t]he government must prove there was no reasonable possibility that the error contributed to [the] verdict." *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017) (citations omitted). That is not to say, however, that the members must be wholly unaware of the instructions at issue, but rather that the instructions—later found to be erroneous—were "unimportant in relation to everything else the [members] considered[.]" *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (citation and internal quotation marks omitted).

---

[21] *Clifton*, 35 M.J. at 79.

[22] Record at 617.

The members acquitted the appellant on four of the six abusive sexual contact specifications, including all those stemming from his 2012 assignment to USS DWIGHT D. EISENHOWER. However, evidence supporting the two specifications for which he was convicted, while factually sufficient, was not overwhelming. There was no confession, physical evidence, or eyewitnesses (other than the two victims), and the defense presented evidence that the appellant had a friendly, playful relationship with both AN BH and AR KC.

In the government's rebuttal argument, the trial counsel emphasized the propensity evidence:

> If you believe that any one of these sexual contacts were proved more likely than not—so that's different than beyond a reasonable doubt.
>
> It basically means 51 percent. It's more likely that it happened than didn't happen. If you think that any one of those was proven more likely than not, you can use that in deliberating about the other ones, and that means that you can look at each abusive sexual contact that we've proven more likely than not and make a determination about whether or not [the appellant] is somebody who's more likely to touch somebody in a sexual way.
>
> You can use that. You can use the abusive sexual contact charges in your deliberations of the other charges. . . . You can use that to say that [the appellant] is somebody who touches people in a sexual way; is more likely to have done it than somebody who isn't so predisposed. You can do that.[23]

Although the members were not convinced beyond a reasonable doubt that the accused committed each abusive sexual contact charged, there is a reasonable possibility they "bootstrap[ed] their ultimate determination of the accused's guilt" with respect to the offenses against AN BH and AR KC for which he was convicted, "using the preponderance of the evidence burden of proof with respect" to the offenses of which he was acquitted. *Hills*, 75 M.J. at 357. While it is certainly possible for members to convict an accused based solely upon the testimony of his accusers, in order to sustain that conviction upon review in light of the instructional error, we must be convinced beyond a reasonable doubt "that the erroneous propensity instruction played no role" in the conviction. *United States v. Guardado*, 77 M.J. 90, slip op. at * 12 (C.A.A.F. 2017). In short, and based upon this record, we are not convinced

---

[23] *Id.* at 661.

that the members considered this evidence "unimportant in relation to everything else[.]" *Moran,* 65 M.J. at 187. So, although we find the appellant's convictions for abusive sexual contact to be both legally and factually sufficient, we are not convinced beyond reasonable doubt that the instructional error did not contribute to those convictions.

## D. Sexual harassment instruction

The appellant contends that Specifications 1 and 2 of Charge I, alleging that he violated SECNAVINST 5300.26D, fail to state offenses because a subsequent directive issued by the Secretary of the Navy cancelled the sexual harassment instruction. The Secretary of the Navy Directives Policy, SECNAVINST 5215.1E of 28 October 2014, "sets forth policy and responsibilities for developing and maintaining directives from the Secretary of the Navy (SECNAV)." Specifically, the appellant argues that paragraph 4.e of SECNAVINST 5215.1E operates to cancel SECNAVINST 5300.26D.

Paragraph 4.e states:

> All SECNAVINSTs and SECNAV manuals shall be reviewed beginning on the second anniversary of the document's effective date and every 2 years thereafter to ensure necessity, currency, and consistency with Department of Defense (DoD) policy, existing law, and statutory authorities. Directives reaching a 6-year anniversary without reissuance may be certified as current for an additional year. After 6 years, the directive shall be revised. Extensions beyond the 6-year anniversary date must be requested through the Department of the Navy/Assistant for Administration (DON/AA) and approved by SECNAV. Directives reaching the 7-year anniversary that are not in the revision process are self-canceling on that date and continued use requires a full revision to the next available point number.

The appellant contends that the self-cancelling language of paragraph 4.e of SECNAVINST 5215.1E immediately and automatically cancelled then-existing instructions that were over seven years old—such as SECNAVINST 5300.26D. We disagree.

As we noted *supra,* a specification states an offense if it alleges, either expressly or by implication, every element of the offense, so as to give the accused notice and protection against double jeopardy. *Crafter*, 64 M.J. at 211. The elements for violation of a lawful general order or regulation, under Article 92, UCMJ are:

> (a) That there was in effect a certain lawful general order or regulation;

(b) That the accused had a duty to obey it; and

(c) That the accused violated or failed to obey the order or regulation.[24]

The specifications at issue here each allege that, "from on or about 22 May 2015 until on or about 30 June 2015," the appellant "violate[d] a lawful general order, to wit: Paragraph 7(a)(1), SECNAVINST 5300.26D, dated 3 January 2006 by wrongfully sexually harassing" AN BH and AR KC, respectively.[25] These specification fairly placed the appellant on notice and allege every element of the offense. The appellant contends, however, that the specifications "fail to state an offense because SECNAVINST 5300.26D was not in effect at the time of the alleged misconduct. Violations of Article 92, UCMJ require a valid order."[26]

The government avers that the appellant waived appellate review concerning the validity of the order when he consented to the trial judge taking judicial notice of SECNAVINST 5300.26D. In this case we need not decide whether the appellant waived this issue because, mindful of our plenary review mandate under Article 66(c), UCMJ, we determine that the plain language of SECNAVINST 5215.1E did not cancel SECNAVINST 5300.26D. *See United States v. Chin,* 75 M.J. 220, 223 (C.A.A.F. 2016) ("CCAs have an affirmative obligation to ensure that the findings and sentence in each . . . case are correct in law and fact . . . and should be approved" and "are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error") (citations and internal quotation marks omitted).

Construction of a regulation, such as SECNAVINST 5215.1E, is a question of law, which we review *de novo. United States v. Estrada,* 69 M.J. 45, 47 (C.A.A.F. 2010); *United States v. United States v. McCollum,* 58 M.J. 323, 340 (C.A.A.F. 2003). "In interpreting regulations, we apply the general rules of statutory construction." *Estrada,* 69 M.J. at 47 (citing *United States v. Custis,* 65 M.J. 366, 370 (C.A.A.F. 2007)) (additional citation omitted). "Statutory construction begins with a look at the plain language of a rule." *United States v. Rodriguez,* 67 M.J. 110, 115 (C.A.A.F. 2009) (citation omitted).

---

[24] MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.), Part IV, ¶ 16b(1).

[25] Charge Sheet.

[26] Appellant's Motion to Attach; Motion for Reconsideration; Motion to File Supplemental Assignment of Error; and Motion for Leave to File at 8.

The first sentence of paragraph 4.e directs that SECNAV directives shall be reviewed on the second anniversary of their effective date and every two years thereafter. Clearly this language is prospective; the direction to review an instruction on its second anniversary cannot apply to instructions that are already more than two years old. Paragraph 4.e then states that directives "reaching" the six-year anniversary may be certified as current for another year, but "shall be revised" and those directives "reaching" the seven-year anniversary, not in the revision process are "self-canceling." The "use of a verb tense is significant in construing [regulations]." *United States v. Wilson*, 503 U.S. 329, 333 (1992) (citations omitted). Here, the use of the present participle "reaching"—as opposed to the past tense/past participle "reached" or even the perfect participle "having reached"—when read in conjunction with the clearly prospective opening sentence of paragraph 4.e makes clear that SECNAVINST 5215.1E is concerned with "developing and maintaining [SECNAV] directives" *going forward* and not with canceling current, seven-year old instructions.[27] *See Laube v. Allen,* 506 F. Supp. 2d 969, 980 (M.D. Ala. 2007) ("[A] present participle . . . denotes action that is continuing or progressing, as distinct from . . . a perfect participle that denotes completion") (citing John B. Opdycke, Harper's English Grammar, 141 (rev. ed. 1966); *Morse v. Servicemaster Global Holdings, Inc.*, 2012 U.S. Dist. LEXIS 144691, at *15 (N.D. Cal. Oct. 4, 2012) (Use of the present participle "arising" in an arbitration agreement made clear that the agreement applied to claims that may arise going forward, not claims that have already accrued).

The Secretary of the Navy could have explicitly cancelled then-existing seven-year-old instructions, but chose not to do so. Rather, the plain language of SECNAVINST 5215.1E and its use of the present participle verb tense convinces us that it only applied prospectively and did not cancel instructions such as SECNAVINST 5300.26D that had already reached their seventh anniversary by the time of SECNAVINST 5215.1E's publication. Thus, SECNAVINST 5300.26D was a valid general regulation at the time of the appellant's offenses.

Finally, our conclusion that SECNAVINST 5300.26D was a valid instruction during the time of the appellant's offenses also renders moot the appellant's contention that he received ineffective assistance of counsel when his CDC failed to object to the military judge's taking judicial notice of SECNAVINST 5300.26D.[28] Since the instruction was valid, we find neither deficient performance in the counsel's failure to object nor any prejudice,

---

[27] SECNAVINST 5215.1E at ¶ 1.

[28] *See* Appellant's Reply to Appellee's Answer to Show Cause Order of 17 Oct 17 at 7 ("Should this Court apply waiver, then it must also determine whether [the appellant's] counsel were ineffective").

since there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

## III. CONCLUSION

The guilty findings to Charge II, Specifications 2 and 3, and the sentence are set aside. The remaining findings are affirmed. The record is returned to the Judge Advocate General for remand to an appropriate CA with a rehearing authorized on Charge II, Specifications 2 and 3, and the sentence— or on the sentence alone.

Judge FULTON and Judge SAYEGH concur.

For the Court



R.H. TROIDL
Clerk of Court